CASE 71—PETITIONS EQUITY— MAY 23, 1896.

## City of Louisville, &c., v. Board of the Nazareth Literary and Benevolent Institutinn.

## Same v. St. Xavier's College.

## Commonwealth v. St. Mary's College.

## Same v. Loretto Literary & Benevolent Institution.

## Board of Education of Common School District No. 1, Pike Co., v. Trustees Pikeville Collegiate Institute.

THE FIRST TWO BEING APPEALS FROM THE JEFFERSON CIRCUIT COURT, CHANCERY DIVISION, THE NEXT TWO FROM MARION CIRCUIT COURT, AND THE LAST FROM PIKE CIRCUIT COURT.

1. TAXATION—EXEMPTION OF CHARITABLE AND EDUCATIONAL INSTITUTIONS—CONSTITUTIONAL CONSTRUCTION.—Schools and colleges where general education is imparted to all who may apply, without regard to nationality or religious creed, either free or at merely nominal prices, and the property of which has been acquired by gift from charitable people or by purchase with funds so derived, and in which there is no element of personal gain or profit, are institutions of "purely public charity," and "institutions of education not used or employed for gain by any person or corporation and the income of which is devoted solely to the cause of education" within the meaning of section 170 of the Constitution of Kentucky.

City of Louisville, &c., v. Board of Trustees of the Nazareth, Etc.

LAF. JOSEPH FOR CITY OF LOUISVILLE.

(Brief same as in case of Trustees of Kentucky Female Orphan School v. Louisville.)

R. LEE SUTER FOR THE COMMONWEALTH.

(Brief same as in case of City of Louisville v. Southern Baptist Theological Seminary.)

E. J. McDERMOTT FOR ST. XAVIER'S COLLEGE AND NAZARETH LITERARY AND BENEVOLENT INSTITUTION.

1. Under the Constitution of 1849 it was held by this court that nothing could be exempt from taxation except "in consideration of public service," but this test can not be applied under the present Constitution because it in specific words provides that institutions of "purely public charity" and educational institutions not conducted for private gain, shall not be taxed.

2. A reference to the debates in the constitutional convention when section 170 was under debate, shows that it was then construed by the members of that body as embracing such institutions as are here involved. (See Debates of Constitutional Convention, pp. 2372, 2541 to 2553, 2499-2500, 2562, 2568.)

3. The case of Philadelphia v. Masonic's Home does not support appellant's contention. It simply held that an institution that was designed solely for Masons, was not a "purely public charity," because it was not open to the indefinite or general public. The institutions involved in these cases are open to the general public without qualification or condition of any kind.

4. A "purely public charity" is not necessarily one solely controlled and administered by the State, but includes private institutions operated for purely public charity and not administered for private gain. The essential feature of a public use is that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefinite or unrestricted quality that gives them their public character. (Donohugh's Appeal, 86 Pa., 306; Philadelphia v. Women's Christian Association, 17 Atl. Rep., 475; State v. Collector, 20 Atl. Rep., 292; Trustees v. Taylor, 25 Atl. Rep., 55.)

E. J. McDERMOTT IN RESPONSE TO PETITIONS FOR REHEARING.

1. An institution may be "a purely public charity" though not free and though conducted by a religious society. To crush out all private schools and hospitals, etc., not operated for gain is to increase our taxes enormously and to produce waste and inefficiency.

520          KENTUCKY REPORTS.          [Vol. 100

City of Louisville, &c., v. Board of Trustees of the Nazareth, Etc.

2. In section 170 of Constitution we not only copied words of Ohio and Pennsylvania Constitutions to exempt "purely public charities;" but to leave no doubt, we added language of General Statutes under which schools like those of Nazareth and St. Xavier not operated for gain have always been exempt, while schools operated for gain (as in McCullough case) were taxed. Language of Constitution, if not to be meaningless, exempts some private schools, namely, those not operated for gain. If schools of St. Xavier and Nazareth are not exempt, none can be.

3. Appellees not operated for gain. Members can own nothing. All the property forever dedicated to education and charity. St. Xavier saves city and State fourteen times amount of tax bill. Nazareth saves nearly as much. All of appellees' property in actual use by institution. None rented. All of institutions open to everybody on same terms. More than 5,000 children educated by such Catholic institutions here. They save city and State more than $122,000.00 annually—enough to pay taxes at 2 per cent. on all the Protestant, Catholic and Jewish churches, schools, asylums, infirmaries, hospitals, etc., in Louisville. It is possible because teachers and nurses work for nothing.

P. B. & UPTON W. MUIR FOR NAZARETH LITERARY AND BENEVOLENT INSTITUTION.

1. The evidence shows that the Nazareth Institution and each of its branches, is a "purely public charity;" that none of them are operated for profit or gain; that whatever fees or charges are made against those able to pay, are expended upon those unable to pay; that they are open to all persons of whatever creed or belief or nationality, and that but for the fact that the "sisters" donate their services they would not be self-sustaining.

2. The framers of our Constitution having adopted from the States of Ohio and Pennsylvania the phrase "purely public charity," after those words had been construed by the courts of those States, adopted them as so construed, and the courts of this State will follow that construction. (Breckinridge v. Com., 97 Ky., 270; Com. v. B. & L. Asso., 97 Ky., 329; Brown v. Walker, 161 U. S.; Gerke v. Purcell, 25 Ohio St., 239; Philadelphia v. Women's Christian Asso., 125 Penn. St., 578.)

HELM & BRUCE FOR NAZARETH LITERARY AND BENEVOLENT INSTITUTION.

1. When one State borrows the language of a statute or constitution of another State after it has been judicially construed by the courts of that State, the construction is presumed to be adopted

with the words. (Carney v. Hampton, 3 T. B. Mon., 231; Pennock v. Dialogue, 2 Peters, 18; McDonald v. Honey, 110 U. S., 628; Smith's Commentaries on Statute and Constitutional Law, sec. 634; Sedgwick on Construction of Statute and Constitutional Law, sec. 363; Inter-State Commerce Com'rs v. B. & O. R. R. Co., 145 U. S., 284; Brown v. Walker, 161 U. S., 600; Amer. & Eng. Enc. of Law, Vol. 23, pp. 432-3; Endlich on Interpretation of Statutes, secs. 530 and 371.)

**2.** The word "institutions" as used in the 170th section of the Kentucky Constitution, is used in the sense of "corporations" or "societies."

**3.** Where the property of such institutions is exempted without language limiting the extent of the exemption, all the property of such institutions is exempt. (Farmers' Bank v. Com., 6 Bush, 128; Franklin Co. v. Deposit Bank, 87 Ky., 386.)

SAM. T. SPALDING FOR THE COMMONWEALTH.

**1.** Under section 170 of the Constitution, it is the use that determines the exemption, and not the ownership. The buildings and such property as is directly used for educational purposes, is what was meant, and not everything they might own. Taxation is the rule and exemption the exception, and the exemption must appear in the language of the instrument, it will not do to insert it by construction. Every reasonable doubt should be resolved against the exemption. (Erie R. R. Co. v. Penn., 21 Wall, 492; Cooley on Taxation, 146; Railroad v. Maguire, 20 Wall; Bank v. Billings, 4 Pet., 514; Railroad v. Maryland, 10 How., 376; Murat v. Railroad, 18 Wall, 206; Bailey v. Maguire, 20 Wall; Gas Light Co. v. Shelby Co., 109 U. S., 398; 117 U. S., 139, 29, 83; Railroad v. Bourbon Co., 82 Ky., 492; Railroad v. Dennis, 116 U. S., 665; Bank v. Shelly, 1st Black, 436, 446; Gilman v. Sheboygan, 2d Black, 510, 513; 18 Wall, 206, 225; Hoge v. Railroad, 99 U. S., 348, 355; Railroad v. Wright, 116 U. S., 231, 236; Tucker v. Ferguson, 22 Wall, 527, 575; Railroad v. Supervisors, 93 U. S., 595, 597; Railroad v. Commissioners, 112 U. S., 609; Water Co. v. Hamilton, 81 Ky., 517; F. L. & V. T. Co. v. Com., 82 Ky., 386; Lancaster v. Clayton, 9 Ky. L. Rep., 611.)

**2.** An institution to be exempt under section 170 must (1) be a corporation not used or employed for gain, and (2) the income must be devoted solely to the cause of education. When a charge is made for the board and tuition of pupils, the institution is employed for gain or profit, and is not within the class exempted.

H. W. RIVES FOR ST. MARY'S COLLEGE AND LORETTO LITERARY AND BENEVOLENT INSTITUTION.

**1.** There can be no doubt of the meaning of the Constitutional pro-

- 522        KENTUCKY REPORTS.        [Vol. 100

City of Louisville, &c., v. Board of Trustees of the Nazareth, Etc.

vision, when the reasons urged for its adoption in the convention, the provisions of the Hewitt revenue law, and the uniform policy of the State from the beginning are considered. Instead of an intention to change the policy of the State with reference to such exemptions, it is manifest that the convention meant to follow the old policy.

STEWART & STEWART FOR THE BOARD OF EDUCATION OF PIKE COUNTY.

1. The privileged classes must come clearly within the rule; all doubts are resolved against them, and it devolves upon those asking it to show affirmatively that they are exempt. The rights, powers and privileges of those claiming the exemption should be circumscribed rather than enlarged. (Barbour v. Louisville Board of Trade, 82 Ky., 645; Com. v. Masonic Temple Co., 87 Ky., 349; Morgan v. Louisiana, 93 U. S., 221; Wilson v. Gains, 103 U. S., 417; Railroad v. Palmes, 109 U. S., 224; Bradley v. McAtee, 7 Bush, 667; Railroad v. Com., 9 Bush, 439; Clark v. Water Co., 12 Ky. L. Rep., 309; Auditor v. McKibben, 12 Ky. L. R., 474; Lancaster v. Clayton, 86 Ky., 375.)

2. The Pikeville Collegiate Institute is in every respect a private institution. The public has no voice in its management, the church is its sole owner and controller, selects its patrons, and receives the benefits, any person may be excluded from its benefits at the option of the church.

C. M. PARSONS FOR PIKEVILLE COLLEGIATE INSTITUTE.

1. The Pikeville Collegiate Institute is an educational institution not used for profit or gain, and the income is used solely for the purpose of the institution, and even then it is not self-sustaining. It is such an institution as is contemplated by section 170 of the Constitution.

W. J. HENDRICK FOR PIKEVILLE COLLEGIATE INSTITUTE.

1. The pleadings and evidence show this institution to be of the class which was in the mind of the Constitution-makers, when they exempted by section 170, from taxation, "institutions of education not used or employed for gain by any person or cor poration."

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT:

The institutions claiming exemption from taxation here, save as named afterwards, are schools and col-

leges where general education is imparted to all who may apply, without regard to nationality or religious creed. All save the last case named above are under the control of members of the Roman Catholic faith; the last named is managed by the Presbytery of Ebenezer, of the Presbyterian Church.

The object of all is to furnish general education either free or at merely nominal prices. The property of all has been acquired by gift from charitable people or by purchase with funds so derived, and in none of them is there any element of personal gain or profit.

In Xavier College there are some twenty-two brothers who work and teach for nothing, and some 200 boys. These brothers also teach some 400 boys in the parochial schools. When old and unable longer to teach or be useful, they are allowed to remain at the college as a matter of charity.

The Loretto Literary and Benevolent Institution is an educational institution for females, located, as is that of St. Mary's College, in Marion county, and both founded some sixty-five or seventy years ago. The whole income from nominal tuition fees is devoted exclusively to the cause of education, and the lives of those in charge are devoted likewise, without compensation. While a Catholic school, many non-Catholics attend.

Nazareth is a corporation under the management of the Sisters of Charity, who control a number of schools and hospitals. In all these institutions the sisters and managers devote their lives to charitable and educa-

tional work, and in all of them persons are taken without reference to their social position, their property or their religious opinions.    Charges are made when practicable, particularly at the infirmary and at Presentation Academy, but none of the establishments are more than self-supporting, and some are not that. They barely take in more than their actual expenses, and they live only because the sisters give their work for nothing.    If money is received from one who is able to pay, it is spent on the poor who are not able.

The work of the Pikeville Collegiate Institute was commenced in 1889, in Pike county, and its object was purely educational. Moderate tuition fees are charged, but the income is not sufficient to maintain the institution.    In all these cases the trial courts properly held the appellees to be "institutions of purely public charity, and institutions of education not used or employed for gain by any person or corporation, and the income of which is devoted solely to the cause of education." (Trustees Ky. Orphan Female School v. City of Louisville, ante, 470.)

The respective judgments are affirmed.

Judges Guffy and DuRelle dissenting.

After the re-argument of the cases, Judge DuRelle delivered the following dissenting opinion, in which Judges Guffy and White concurred:

We dissent from the opinion in these cases for the reasons stated in dissenting opinions filed in Louisville v. Southern Baptist Theological Seminary, ante, 506, and in Kentucky Female Orphan School v. Louisville, ante, 470.