Joseph FISCHER; and Cindy Fischer, Appellants,

v.

John R. FISCHER, Successor Executor of the Estate of John Fischer, Appellee.

No. 2009–SC–000245–DG.

Supreme Court of Kentucky.

March 24, 2011.

As Modified Sept. 20, 2011.

Rehearing Denied Oct. 27, 2011.

Thomas V. Haile, Louisville, KY, Counsel for Appellant.

James C. Nicholson, Nicholson Law Office, Louisville, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

This case involves a dispute between two brothers, Appellant Joseph Fischer and Appellee John R. Fischer, over an alleged oral agreement relating to the care of their elderly and ill mother by which one brother agreed to give up part of his inheritance if the other brother would care for their mother. The trial court found that a valid agreement had been reached. The Court of Appeals reversed on an issue that had not been raised at the trial court but which the court reached as part of its overall examination of the validity of the agreement. The primary question before this Court, then, is whether the Court of Appeals can reverse the judgment of the trial court on an issue that was not specifically raised at the trial court, and if so, whether the appellate court erred in finding the contract invalid. Answering the first question in the negative, this Court never-

theless affirms for other reasons. In so doing, this Court resolves the longstanding conflict between two lines of cases requiring that a party raise by cross-petition for discretionary review issues raised but not decided at the Court of Appeals and that a lower court decision be affirmed for any valid reason raised and appearing in the record.

## I. Background

Faced with the decision of taking their mother into one of their homes or putting her in a nursing home, which would deplete her entire estate, the brothers engaged in a series of conversations wherein Joseph Fischer agreed to keep their mother in his home and care for her, and not to charge for expenses during her care in order to preserve the estate in exchange for John Fischer's agreement to take only 13% of the estate at distribution. Their mother had a will that left her estate equally to both sons. She was incompetent at the time of the brothers' agreement, having Alzheimer's disease. The brothers' agreement was never reduced to writing.

At the time of the agreement, Joseph had already moved his mother into his home, and he and his wife continued to care diligently for her until her death. True to his agreement, he did not charge the estate for caring for his mother. In fact, at trial he acknowledged that he would have cared for his mother regardless of the agreement.

After their mother's death and probate was instituted, the brothers could not agree whether John had agreed to take 13% of the entire estate or only 13% of the stocks. John balked and demanded his entire inheritance share. Thereafter, probate languished, and on May 25, 2006, Joseph and Cindy Fischer filed an action in Jefferson Circuit Court alleging that John had breached their oral agreement and raising a quantum meruit theory for recovery of the value of their services. In answer, John denied the complaint, and affirmatively raised the statute of frauds, the statute of limitations, and lack of consideration as defenses. A later motion for a continuance of trial filed by John chronicled the history of the case in probate, and stated that Joseph had been removed as Executor of their mother's estate on July 11, 2006 due to his neglect of the estate action, and that John had been served with civil summons in this suit on that same day. The trial court granted the continuance, allowing further discovery. This case was subsequently tried to a jury, which entered a verdict in favor of the Appellants on May 9, 2007.

On appeal, John raised a number of issues, including that his agreement was void under the rule against assigning a mere expectancy and generally that no valid agreement was reached. The Court of Appeals reversed, holding that the claim about assigning a mere expectancy had not been raised at trial and was therefore not preserved for appellate review.

The court went on to address whether there was a valid agreement between the brothers. Though John claimed that he was entitled to a directed verdict below on a number of grounds, the court limited itself to this issue, finding his claim that there was no valid agreement to be dispositive. The court ruled that under basic contract law, the agreement failed because it was lacking in consideration. The basis for this finding was that John could not use his expectancy in his inheritance as consideration for an agreement. Though the court had already ruled that this issue, at least as an independent ground for reversal, was not preserved for appellate review, having been raised for the first time on appeal, it nevertheless discussed the matter because it was necessarily a

part of reviewing "whether there was a valid agreement," which required "apply[ing] basic contract principles, including whether there was consideration flowing both ways."

This Court took discretionary review to examine whether John's failure to raise the issue of assignment of his mere expectancy at trial barred its consideration on appeal, even as part of what the Court of Appeals characterized as the larger issue of the validity of the agreement between the brothers.

## II. Analysis

### A. An Appellate Court Cannot Review Distinct Issues That Were Never Raised at the Trial Court Absent Palpable Error.

As noted above, John argued at the Court of Appeals that he was entitled to a directed verdict because he could not contract to transfer his expectancy in his mother's estate during her lifetime, among other issues which the Court of Appeals did not address. This is clearly a correct statement of the longstanding law of this state. See, *e.g.*, *Hunt v. Smith*, 191 Ky. 443, 230 S.W. 936, 938 (1921); *McCall's Adm'r v. Hampton*, 98 Ky. 166, 32 S.W. 406 (1895). However, this argument was never made to the trial court.

In his motion for directed verdict at the close of Joseph's case, John raised several specific grounds. First, he argued that Joseph's claim was properly a claim against the estate, rather than a contract claim, since the services were for the mother's benefit, not his own. As such, the claim should instead have been made in the probate action under KRS 396.011 (and because no probate claim had been filed, any claim against the estate was now time-barred). John also argued that he had no duty to pay for his mother's care, and that no contract could be implied from Joseph and Cindy's services because the

law presumes them to be "natural" caretakers. He also argued that there was no express contract, and that the evidence of any contract was insufficient because it was not clear and convincing, there was no meeting of the minds, and his own promise had been gratuitous. Finally he argued that there could be no quantum meruit claim because the Appellants made no change in their position, having testified they would have cared for their mother with or without his promise.

John specified essentially the same grounds on his motion for directed verdict at the close of all the proof, though he also raised the issue that the purported agreement "bump[ed] up against the statute of frauds," because it was in part about real estate. Finally, John reiterated these arguments in his motion for judgment notwithstanding the verdict or for a new trial. At the close of all the proof, the trial court denied John's directed verdict motion on the question of whether there was a contract, and allowed that claim to go to the jury. The court, however, granted the motion as to the quantum meruit claim, which was dismissed.

██ After careful review of the record, it is clear that at no time did John argue to the trial court that there was a failure of consideration because *he* did not provide consideration to Joseph and Cindy. John's actual argument in his directed verdict motion was that Joseph and Cindy provided no consideration to him because his promise to forgo part of his inheritance had been gratuitous. More specifically, at no time was there a discussion of a failure of consideration because of his inability to assign his expectancy interest in his mother's estate.

Yet, in a circuitous fashion, the Court of Appeals determined that while John had not preserved this issue for appeal, it nonetheless had to consider the issue be-

cause John had argued generally that the contract was invalid and thus preserved review of *any* issue going to the validity of the contract, including whether there was consideration on both sides. But, as demonstrated by the recitation of what John argued in his directed verdict motion above, no such broad claim that the contract was simply invalid was made.

Instead, John made very narrow and specific claims about the contract (e.g., that there was no meeting of the minds, and that the evidence did not support finding a contract). In fact, the closest John came to arguing the ground on which the Court of Appeals relied—that consideration failed because John could not assign an expectancy—was that all he ever did was make a gratuitous promise. A gratuitous promise does not seek any consideration from the other side; it is in the nature of a potential gift. But by making this argument to the trial court, John at best claimed that Joseph and Cindy gave no consideration. John made no argument to the trial court that the contract failed because *he* did not give consideration. The entire thrust of his arguments on both motions for directed verdict was that the Appellants should have made a claim in probate court for their services, because he never entered into a binding agreement with them at all, having merely promised to forgo part of his inheritance out of appreciation and then subsequently changing his mind. He never argued that he was *unable* to enter into an agreement—just that he did not. The words "assignment of an expectancy interest" were never uttered to the trial court, nor was any related claim made. That argument was first raised on appeal.

Thus the critical question is whether that ground for reversal was preserved for appellate review. The Court of Appeals found that it was not, but nevertheless reached the issue as part of its general discussion about the validity of the contract. This Court agrees that the issue was not preserved for appeal, but disagrees that it can still be reached as part of other issues, because it is a markedly different claim than the ones presented to the trial court.

CR 50.01 provides in part that "[a] motion for a directed verdict shall state the specific grounds therefor." This leads to the question of how much specificity is required. Should a reviewing court take the "horseshoes" approach that the grounds stated are "close enough" or should a reviewing court require sufficient specificity that the trial court is given definitive notice of what the movant believes is the reason he or she is entitled to the directed verdict so that the court can rule on its merits?

■ When a bare motion for directed verdict is made, it obviously violates CR 50.01 because there is no specificity as the rule requires. *See, e.g., Gulf Oil Corp. v. Vance,* 431 S.W.2d 864, 866 (Ky.1968). But is a motion that merely alleges an invalid contract or a lack of consideration enough to allow the movant to later claim on appeal that his consideration was invalid? Or more specifically, is a motion, such as the one here, that specifically alleges a failure of the respondent's consideration sufficient to also allow the movant to allege a failure of his own consideration on appeal merely because the trial motion touched on the broad issue of consideration?

■ It seems reasonable to this Court that a trial court should at least be given the reasons why there is a lack of consideration if a movant wishes to preserve the issue for appellate review. It also seems reasonable that if a court perfunctorily denies the motion without asking for further grounds that a presumption can be made that the court actually considered all possible grounds before ruling, so that it

would be reasonable on appeal to flesh out with specific legal reasons why the court was wrong, provided those reasons were supported by the evidence or law. But when a movant states specific grounds for the motion to the trial court, the court rules on those grounds. The court's decision, then, is essentially a denial of the movant's specific argument—of the grounds argued. If a different ground is argued on appeal, then the movant has indeed "fe[d] one can of worms to the trial judge and another to the appellate court." *Kennedy v. Commonwealth*, 544 S.W.2d 219, 222 (Ky.1976), *overruled on other grounds by Wilburn v. Commonwealth*, 312 S.W.3d 321 (Ky.2010). In such an instance, the trial court has made no decision related to the specific legal question that is later raised for the first time on appeal.

■ It has long been this Court's view that specific grounds not raised before the trial court, but raised for the first time on appeal will not support a favorable ruling on appeal. Most simply put, "[a] new theory of error cannot be raised for the first time on appeal." *Springer v. Commonwealth*, 998 S.W.2d 439, 446 (Ky.1999) (discussing specifically a directed verdict issue); *see, e.g., Harrison v. Leach*, 323 S.W.3d 702, 708–09 (Ky.2010); *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky.2009) ("More importantly, this precise argument was never made in the trial court. An appellate court 'is without authority to review issues not raised in or decided by the trial court.' ") (quoting *Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky.1989)); *Combs v. Knott County Fiscal Court*, 283 Ky. 456, 141 S.W.2d 859, 860 (1940) ("[A]ppellant is precluded from raising that question on appeal because it was not raised or relied upon in the court below. It is an unvarying rule that a question not raised or adjudicated in the court below cannot be considered when raised for the first time in this court.").

The primary reason for this rule is to give the trial court a reasonable opportunity to consider the question during the trial so that any problem may be properly resolved at that time, possibly avoiding the need for an appeal. *Gulf Oil Corp. v. Vance*, 431 S.W.2d at 865 ("The purpose of the rule is to apprise fairly the trial judge as to the movant's position and also to afford opposing counsel an opportunity to argue each ground before the judge makes his ruling. The attention of the trial judge can thus be focused on possible reversible errors which might otherwise be obscure with only a general motion for a directed verdict."). Thus, the rule is necessary to judicial economy. *See Harrison*, 323 S.W.3d at 709 ("[W]e believe a defendant should not be permitted to stand mute at the trial court level regarding standing, only to raise the issue on appeal (or, as in this case, continue to ignore the issue but ultimately benefit from an appellate court's raising it on its own). Such an approach would be a grossly inefficient use of the time and resources of the parties and of trial courts and would be a disincentive for attorneys to comply with their duty thoroughly and timely to determine the legal standing of all parties at the infancy of litigation."); *Hartsock v. Commonwealth*, 382 S.W.2d 861, 864 (Ky.1964) ("The underlying principle of the rule is to afford an opportunity to the trial court, before or during the trial or hearing, to rule upon the question raised.").

Also, by requiring that trial counsel focus the trial court's attention on a purported error by specifically identifying it, the rule makes sure that there is a discrete decision for an appellate court to review. If the specific ground complained of on appeal is not given at the trial court, then the movant has failed to preserve his

thinking should the trial court rule against him, and there will be no record to establish that the court did not rely on other grounds that might suffice. Giving specific grounds all but forces the trial court to decide the specific issue raised, which allows for reasonable appellate review. Where an appellate court does not "know[ ] what grounds were stated, [it] can not determine whether the trial court erred in its ruling." *Whitesides v. Reed,* 306 S.W.2d 249, 250 (Ky.1957). "The appellate court reviews for errors, and a nonruling is not reviewable when the issue has not been presented to the trial court for decision." *Turner v. Commonwealth,* 460 S.W.2d 345, 346 (Ky.1970); *see also Hatton v. Commonwealth,* 409 S.W.2d 818, 819–20 (Ky.1966) ("The appellate court reviews for errors, and a nonruling cannot be erroneous when the issue has not been presented to the trial court for decision.").

■ This analysis applies equally where a party raised an issue to the trial court that differs substantially from that later raised on appeal. Though in such an instance the trial court has made *a* decision, it did not decide the issue that the party complains of on appeal. "[I]t is the accepted rule that a question of law which is not presented to or passed upon by the trial court cannot be raised here for the first time." *Hutchings v. Louisville Trust Co.,* 276 S.W.2d 461, 466 (Ky.1955); *Benefit Ass'n of Ry. Employees v. Secrest,* 239 Ky. 400, 39 S.W.2d 682, 687 (1931). Similarly, the rule applies to bar a party from challenging a necessary element of a cause of action for the first time on appeal. *See Commonwealth, Transp. Cab., Bureau of Highways v. Roof,* 913 S.W.2d 322, 324 (Ky.1996) (refusing to allow agency to challenge duty element of negligence for first time on appeal).

■ This dual concern over bringing claimed errors to the trial court's attention and making sure there is a decision for the appellate court to review runs through much of the law. For example, if a party has not preserved the question he is asking an appellate court to review, it can only be reviewed as palpable error on appeal, which requires a finding of manifest injustice to prevail. *See* CR 61.02. In other words, if the trial court has not been given a chance to rule, an appellate court will not reverse absent some extraordinary error. And even the scope of errors reviewable under that rule is limited, namely, to errors committed by the court, rather than pure omissions by the attorneys or litigants. *See Carrs Fork Corp. v. Kodak Mining Co.,* 809 S.W.2d 699, 701 (Ky.1991) ("In applying this rule [CR 61.02], palpable error must result from action taken by the Court rather than from an act or omission by the attorneys or litigants."); *Childers Oil Co., Inc. v. Adkins,* 256 S.W.3d 19, 26 (Ky.2008); *Burns v. Level,* 957 S.W.2d 218, 222 (Ky.1997).

The ground on which the Court of Appeals reversed was not argued to the trial court, as plainly noted by the Court of Appeals itself. The Appellants were given no opportunity to make a record on the issue at the trial court; and the trial court was given no opportunity to rule on the issue. Given the specificity of the grounds John did argue at the trial court, it is reasonable for the trial court to assume that they were the only grounds he wanted considered. This is at the heart of the preservation requirement. An appellate court must be able to tell what the trial court had before it to consider, and what it did consider, before the trial court can be either affirmed or reversed.

■ In instances where a trial court is correct in its ruling, an appellate court, which has de novo review on questions of law, can affirm, even though it may cite other legal reasons than those stated by the trial court. The trial court in that

instance reached the correct result, and thus will not be reversed. *See Kentucky Farm Bureau Mut. Ins. Co. v. Shelter Mut. Ins. Co.*, 326 S.W.3d 803, 812 n. 3 (Ky.2010). But when an appellate court determines to reverse a trial court, it cannot do so on an unpreserved legal ground unless it finds palpable error, because the trial court has not had a fair opportunity to rule on the legal question. Though this policy of placing the burden on the appealing party to have raised an issue before the trial court may appear unfair, since it essentially favors affirming the lower court, the simple fact is that the burden must be placed on someone and there must be a default position, either favoring affirming or reversing, with which to approach cases. Our cases have recognized the potential dissonance of such a rule but have still approved it. *See id.* (noting that a court may affirm for any reason appearing in the record but must reverse only for preserved issues). Ultimately, it is the responsibility of the movant to put the legal ground before the court, because it is, after all, his motion, and he bears the burden of proof and persuasion.

■ The Appellee argues that it was nevertheless legitimate for the Court of Appeals to address his new claim because it was part of that court's de novo review of the validity of the alleged contract. While it is correct that a court's interpretation of a contract is reviewed de novo by an appellate court, *3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metropolitan Sewer Dist.*, 174 S.W.3d 440, 448 (Ky.2005), such review is limited to the question of interpretation presented. It does not also include the whole universe of unraised questions of law that might touch on the contract. Similarly, a trial court's interpretation of the law is reviewed de novo, meaning it is entitled to no deference by the appellate court, but that standard of review does not mean that the appellate court is free to then address any and all legal issues that might affect the case. Rather, the court is bound to address only the question of law presented before a trial court may be reversed.

The Court of Appeals addressed the issue of John's assignment of his expectancy as part of its general review of the validity of the purported contract. But that general issue was not presented to the trial court. John did not claim broadly that the contract was invalid. Instead, John raised very specific claims about the contract, including that the evidence was not clear and convincing, that his offer had been gratuitous, that there had been no meeting of the minds, and that the agreement violated the statute of frauds. Though these claims, being properly preserved for appeal, could be reviewed de novo to the extent they are questions of law, other issues not raised at the trial court, even other questions of law, cannot then be raised on appeal to argue reversal.

■ Thus the answer to the question of how much specificity of grounds is required is resolved by simply saying that enough must be stated to establish the basis of the movant's argument so that the trial court has the opportunity to consider that basis in making a ruling. It must be enough that if the trial court is to be reversed, as the movant has asked, the appellate court knows and considers only the law and facts upon which the court actually relied. Unless palpable error occurred, a reversal must be based on the trial court's failure to properly apply the law that was argued to it, not that which might or should have been. The trial court certainly could base its ruling on law which was not argued, thus making that legal decision reviewable, but because the movant had presented the law he thought applied, the trial court could be reversed if the law it had instead relied upon in ruling *against* the movant was not correct.

In this case, John did not raise the issue of his assignment of a mere expectancy before the trial court. The issues that John did raise were not similar or broad enough to encompass this new issue. Thus, this Court concludes that the Court of Appeals erred by reading the issues that John did raise at the trial court so broadly as to allow it to reach unpreserved issues. The issue of assignment of a mere expectancy was not preserved for appellate review and could not properly serve as the basis of reversal on appeal. Thus, the Court of Appeals erred by deciding in John's favor on this ground.

This, however, raises several new questions: To what remedy, if any, are Joseph and Cindy entitled because of the error? Can this Court affirm the Court of Appeals, despite its error, on other legal grounds that were raised in the lower courts? Are such issues procedurally barred since they were not raised to this Court by way of a cross-motion for discretionary review?

**B. A Motion or a Cross–Motion for Discretionary Review Is Required for Further Review Only When the Lower Court's Judgment Negatively Affects the Movant.**

John argues that the Court of Appeals' decision can still be affirmed for several reasons, all of which were argued on appeal below but which were not resolved by the court. For example, he argues that his offer was gratuitous, and thus was insufficient to form a binding contract and that any agreement they may have reached, being in part about real property, violated the statute of frauds. John, however, did not raise these issues by way of a cross-appeal—more specifically, a cross-motion for discretionary review, which, if granted, would have resulted in a cross-appeal.

This could be problematic, because this Court has stated in the past that it "will not address issues raised [by a party] but not decided by the court below" unless presented in a cross-motion for discretionary review." *Com. Transp. Cabinet Dept. of Highways v. Taub*, 766 S.W.2d 49, 51 (Ky.1988). The Court further explained this procedural bar, stating that "[i]t is the rule in this jurisdiction that issues raised on appeal but not decided will be treated as settled against the appellant in that court upon subsequent appeals unless the issue is preserved by cross-motion for discretionary review." *Id.* at 51–52 (citing CR 76.21(1); *Nashville, C. & St. L. Ry. Co. v. Banks*, 168 Ky. 579, 182 S.W. 660 (1916); *Eagle Fluorspar Co. v. Larue*, 237 Ky. 263, 35 S.W.2d 303 (1931)).[1]

██ But as noted above, it is also the rule in this jurisdiction that the judgment of a lower court can be *affirmed* for any reason in the record. *See Kentucky Farm Bureau Mut. Ins. Co. v. Shelter Mut. Ins. Co.*, 326 S.W.3d 803, 812 n. 3 (Ky.2010) (noting that a court may affirm for any reason appearing in the record). This rule applies equally to both the judgment of a trial court and the judgment of an appellate court.[2] Under this rule, this Court

---

1. Other decisions that have applied *Taub* include *Commonwealth v. Smith*, 5 S.W.3d 126, 129–30 (Ky.1999); *Perry v. Williamson*, 824 S.W.2d 869, 871 (Ky.1992); *Green River Dist. Health Dept. v. Wigginton*, 764 S.W.2d 475, 479 (Ky.1989); and *Crain v. Dean*, 741 S.W.2d 655, 658 n. 2 (Ky.1987).

2. That appellate courts enter or render judgments may seem an unusual concept, since we usually think of such a court as issuing an opinion. Bryan Garner, in discussing the usage of the term "appellate-court judgments," notes:

> *Judgment* in this article means the final decree of an appellate court that acts upon a lower-court judgment, whether affirming, reversing, vacating or whatever. British lawyers ordinarily use *judgment* synony-

has repeatedly stated that "[w]here the prevailing party seeks only to have the judgment affirmed, it is entitled to argue without filing a cross-appeal that the trial court reached the correct result for the reasons it expressed and for any other reasons appropriately brought to its attention." *Com., Corrections Cabinet v. Vester,* 956 S.W.2d 204, 205–06 (Ky.1997). The same rule applies to the judgment of an appellate court. *See Hale v. Combs,* 30 S.W.3d 146, 150 (Ky.2000) (stating "the prevailing party need not file a cross-appeal in order to assert that the lower court ... reached the right result for the wrong reason" where the alternative issue was not decided by the Court of Appeals); *Com. ex rel. Cowan v. Telcom Directories, Inc.,* 806 S.W.2d 638, 642 (Ky.1991) (declining to treat unaddressed and un-cross-appealed issues as procedurally barred where lower court held there was no jurisdiction over the case).

Since this Court reverses or affirms *judgments* rather than *issues,* then if a judgment has been affirmed, there is obviously no logical reason for the prevailing party to appeal, regardless of the ground or grounds upon which affirmance occurs. But a party whose judgment has been reversed is entitled to a reversal based only on what he has had an opportunity to argue to the lower court, absent palpable error.

Discomfort with the sometimes draconian results of *Taub* has also led this Court to make rather fine distinctions between whether an issue had to be raised by a cross-appeal, *see Steel Technologies, Inc. v. Congleton,* 234 S.W.3d 920, 926–27 (Ky. 2007) (holding that preservation of a legal question was not a distinct legal issue requiring a cross-appeal and was instead simply an alternative ground under *Vester*), or to conclude that it is "simply unreasonable to apply *Taub,*" *Petzold v. Kessler Homes, Inc.,* 303 S.W.3d 467, 478 (Ky. 2010), because "the rationale upon which the Court of Appeals vacated the whole judgment would apply with equal force to the lesser issues which it declined to address," *id.* at 477.

Undoubtedly, the rule in *Taub* presents this Court, and attorneys and litigants, with difficulty on occasion. As noted by some commentators, its "mandatory requirement [of a cross-motion for discretionary review] may easily be a trap for the unwary because of the seeming conflict

mously with *opinion,* whereas Americans distinguish between the *opinion* (which sets out the reasons for the disposition) and the judgment (the pronouncement of the disposition itself).

Bryan A. Garner, *A Dictionary of Modern Legal Usage* 482 (2d ed.1995). (Mr. Garner then includes a useful and informative discussion on the importance of using precise language in the appellate court's judgment to clearly identify the effect of the court's decision.)

This, of course, is why the United States Supreme Court's plurality opinions speak of the justice who authored the opinion as "announc[ing] the judgment of the Court and delivering an opinion, in which" only a minority of the justices concur, *e.g., Vieth v. Jubelirer,* 541 U.S. 267, 270, 124 S.Ct. 1769, 158 L.Ed.2d 546 (2004), whereas the author

of a true majority opinion "deliver[s] the opinion of the Court," *e.g., Marks v. United States,* 430 U.S. 188, 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977), which presumably includes the Court's judgment.

This Court's predecessor also issued opinions headed by a statement that a given justice "delivered the opinion of the court." *City of Louisville v. Board of Trustees of Nazareth Literary and Benevolent Institution,* 100 Ky. 518, 36 S.W. 994, 994 (1896) (stating so in the Kentucky Reports volume, but not on Westlaw); *Drace v. Wyat,* 8 Ky. 336, 336 (1818) (stating so on Westlaw also). This practice appears to have changed near the turn of the Twentieth Century, so that the headings of opinions now simply give the name of the justice and the result of the decision (e.g., reversing).

with the general rule that an appellate court may affirm the lower court's judgment on alternative grounds in the absence of cross-appeal." 19 Sheryl G. Snyder, Griffin Terry Summer, 85 Matthew C. Blickensderfer, *Ky. Prac., Appellate Prac.* § 11:5 (2010–2011). This Court has even noted that *Taub* depends on a "fiction," namely, "that issues which the Court of Appeals did not address were decided against the party prevailing in that court." *Petzold*, 303 S.W.3d at 477. Despite these criticisms, this Court has so far avoided engaging *Taub* directly, usually by way of judicial contortions to avoid its effect. *E.g., Steel Technologies, Inc.*, 234 S.W.3d at 926–27.

The problem with *Taub* is not the rule requiring a party prejudiced by the lower court to seek a cross-appeal or lose the claims (such as when a party prevails on some claims but loses on others), whether by direct cross-appeal from the trial court's judgment or by cross-motion for discretionary review from the Court of Appeals. Rather, the problem with *Taub* is the fiction on which it relies, which leads to a misapplication of the rule for when a cross-appeal is required. The rule that issues raised on appeal but not decided by the appellate court will be treated as settled against the appellant in that court upon subsequent appeals makes sense in the context in which that rule originally appeared, namely, *subsequent* appeals after remand to the trial court. The cases cited for this rule in *Taub*—*Nashville, Chattanooga & St. Louis Railway Co. v. Banks*, 168 Ky. 579, 182 S.W. 660 (1916), and *Eagle Fluorspar Co. v. Larue*, 237 Ky. 263, 35 S.W.2d 303 (1931)—fall into this category. In both cases, the undecided questions were treated as the law of the case.

In subsequent appeals, the appellate court's failure to address the issue is treated as an implicit decision against the position raised by the losing party. The theory underlying this approach is that if the appellate court had considered the issue to be meritorious, the court would have reached a different result: "Our rule is that issues which, if sustained, call for dismissal, are taken as decided and rejected when the case has been reversed and remanded on the first appeal." *Board of Trustees of University of Kentucky v. Hayse*, 782 S.W.2d 609, 614 (Ky.1989), *overruled on other grounds by Yanero v. Davis*, 65 S.W.3d 510 (Ky.2001); *see also id.* ("This remand with no discussion of the sovereign immunity defense, which had been raised and, which, if appropriate, would call for dismissal, forecloses further litigation of these questions as a matter of law."). Because a decision on the issue has been reached, albeit implicitly, the standard law-of-the-case bar on re-litigating that issue on a subsequent appeal applies.[3]

---

**3.** The standard rule, explained more in full is as follows:

The law-of-the-case doctrine is a rule under which an appellate court, on a subsequent appeal, is bound by a prior decision on a former appeal in the same court and applies to the determination of questions of law and not questions of fact. "As the term law of the case' is most commonly used, and as used in the present discussion unless otherwise indicated, it designates the principle that if an appellate court has passed on a legal question and remanded the cause to the court below for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case. Thus, if, on a retrial after remand, there was no change in the issues or evidence, on a new appeal the questions are limited to whether the trial court properly construed and applied the mandate. The term law of the case' is also sometimes used more broadly to indicate the principle that a decision of the appellate court, unless properly set aside, is controlling at all subsequent stages of the litigation, which includes the rule that on remand the trial court must strictly follow the mandate of the appellate court."

*Taub*'s application of this rule is problematic for several reasons. It misconstrues a law-of-the-case rule to apply to the next appellate step, rather than the next appeal, even though the law-of-the-case doctrine is aimed at future appeals. In so doing, it confuses that rule with the doctrine that appeals may be taken only by a party adversely affected by a judgment.

This first problem, of course, is that the law-of-the-case doctrine is a procedural rule aimed at specific problems stemming from multiple appeals, not multiple steps in a single appeal. It makes sense to bar a party from raising an issue that was previously decided, either implicitly or explicitly, on a subsequent appeal, since that decision effectively became final when the case was remanded to the trial court and discretionary review of the initial decision either was not sought or was not granted. The initial appellate decision has been rendered and applied by the trial court. Without the law-of-the-case rule, the appellate court that originally decided the issue would have to re-decide the issue on the second appeal.[4] Essentially, the rule is aimed at creating finality.

But *Taub* extends the law-of-the-case limit to a discretionary review of the initial appellate decision, which is in the same appellate line. Usually, this discretionary appeal is to the Supreme Court, which follows an appeal of right to the Court of Appeals. This is not a second or subsequent appeal—it is simply an extension of the first appeal. The initial appellate decision has not yet become final, as would be true when multiple appeals are separated by a retrial. Indeed, on such a discretionary appeal, the original appellate decision is exactly what is to be reviewed by the

higher court. The issues decided in the original appeal have not yet been finally decided and thus are still in play.

It does not make sense to apply the law-of-the-case doctrine, which is aimed at preserving finality and preventing re-litigation of issues on a second trip to the same appellate court, to a case where the decision on the issue in question has not yet become final and, by the very nature of discretionary review, is still being litigated in the next higher court as in this case before the Court.

*Taub* is also problematic because it also places a burden on the party who won on appeal and thus requires that the winning party pursue an appeal. Though some cases have applied the raised-but-not-decided-issue bar to the party that prevailed in the lower court, they did so because "[c]ases cannot be tried piecemeal," *Eagle Fluorspar Co.*, 35 S.W.2d at 304, and only where a party pursues a second appeal, not an extension of the same appeal by way of discretionary review.

By requiring a winning party to seek a cross-appeal, *Taub* undermines the "general rule" that "a party may not appeal from a judgment in his own favor." *Miller v. Miller*, 335 S.W.2d 884, 886 (Ky.1960); *see Brown v. Barkley*, 628 S.W.2d 616, 618 (Ky.1982) ("A party must be aggrieved by a judgment in order to appeal from it."). The reason for this general rule is "that appeals are taken from judgments, not from unfavorable rulings as such." *Brown*, 628 S.W.2d at 618. And for this reason, "[a] cross-appeal is appropriate only when the judgment fails to give the cross-appellant all the relief he has demanded or subjects him to some degree of relief he seeks to avoid." *Id. Brown* went

---

*Inman v. Inman*, 648 S.W.2d 847, 849 (Ky. 1982) (quoting 5 Am.Jur.2d, Appeal and Error § 744).

4. Considered this way, the law-of-the-case doctrine is very similar to res judicata. The parties and cause of action being the same, they are bound by the appellate court's first decision on the subsequent appeal.

on to delineate when a cross-appeal is and is not required, again focusing on the difference between an adverse ruling and an adverse, even in part, judgment:

> Some of our past opinions suggesting the necessity of a cross-appeal in order for an appellee to bring an adverse ruling of the trial court under review by an appellate court appear to have fostered confusion by failing to distinguish between those instances in which the judgment gives the appellee the ultimate relief for which he has contended and those in which the judgment gives him something less. In the latter case he cannot challenge the shortcomings of the judgment without a cross-appeal. *He can, however, by way of bolstering the judgment against the possibility that the appellate court may accept the appellant's claim of error, make the point that he was nevertheless entitled to the judgment on a theory that was properly presented but erroneously rejected by the trial court.* To cite a familiar example, if in a damage suit the judgment reflects a jury verdict in favor of the defendant, there is no reason why he cannot argue to the appellate court that certain errors raised on appeal by the losing plaintiff are immaterial because the defendant had moved for and was entitled to a directed verdict anyway. In short, "cross-appeals can be maintained only when the effect of the trial judgment is to place some obligation on appellee" (or, of course, to deny him something for which he has asked).

*Brown,* 628 S.W.2d at 618–19 (quoting *Clark v. Wells–Elkhorn Coal Co.,* 215 Ky. 128, 284 S.W. 91, 93 (1926)) (footnote omitted, emphasis added).

*Brown* comports with the treatment of cross-appeals at the federal level. There, "[a]bsent a cross-appeal, an appellee may 'urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court' but may not 'attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary.'" *El Paso Natural Gas Co. v. Neztsosie,* 526 U.S. 473, 479, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999) (quoting *United States v. American Railway Express Co.,* 265 U.S. 425, 435, 44 S.Ct. 560, 68 L.Ed. 1087 (1924)). The same rule also applies to cross-petitions for certiorari, *id.* at 479 n. 3, 119 S.Ct. 1430, which are the federal analog of our cross-motions for discretionary review. There is no reason for this Court to deviate from this long-standing and well-reasoned rule.

In some ways, an appeal is analogous to a civil complaint—albeit one over the wrongdoing of a lower court instead of underlying conduct by a defendant. Just as elementary standing requirements governing the filing of the initial complaint require actual harm to a plaintiff, the prerequisite to an appeal is actual harm resulting from a judgment below. Where a party is in no way aggrieved by any judgment below, there is no basis to complain—or appeal. Nor is there any basis to cross-appeal, which is nothing more than the characterization for an appeal by a party already in the posture of an appellee. Any appeal—cross-appeal or otherwise—is only appropriate for an aggrieved party.

Given that cross-appeals are only appropriate in these instances, the requirement of a cross-motion for discretionary review should only kick in when the Court of Appeals' judgment—its *result*—somehow wrongs the appellee in this Court, even if only in part. Where the appellee in this Court has raised an issue at the Court of Appeals, which declines to address it but nevertheless renders judgment wholly in favor of the appellee, a subsequent failure to raise that issue in this Court by way of a cross-motion for discretionary review

should not be an absolute bar to this Court's consideration of it.

Of course, it is important to reconcile this approach with CR 76.21, which states that an appellee in this Court is "permitted ... to file a cross motion for discretionary review designating issues raised in the original appeal which are not included in the motion for discretionary review but which should be considered in reviewing the appeal in order to properly dispose of the case." CR 76.21(1). *Taub* relied on this rule, in part, in requiring that appellees file cross-motions for discretionary review to raise issues that the Court of Appeals did not reach. This, too, seems an incorrect extension of the law for a number of reasons.

First, CR 76.21 is permissive. It does not require that a cross-motion be filed. Of course, this raises the question why the rules provide for a cross-motion at all if such other issues can also be raised in the appellee's responsive brief. For the most part, CR 76.21 is simply meant to parallel the cross-appeal rule, CR 74.01, meaning that all the rules that apply to cross-appeals also apply to CR 76.21. The cross-appeal rule is also permissive, but cross-appeals from trial courts are required only where a party is aggrieved by the trial court's judgment, even if only in part. By analogy, a party would have to be aggrieved by the Court of Appeals' judgment, at least in part, before a cross-motion for discretionary review would be required.

There seems no reason to read CR 76.21 as requiring something different. The only seemingly substantive difference is that CR 74.01 says an "appellee ... may take a cross appeal from a judgment of the trial court," whereas CR 76.21 says a respondent (or appellee) is "permitted" to file a cross-motion for discretionary review "designating issues raised in the original appeal which are not included in the mo-

tion for discretionary review but which should be considered in reviewing the appeal in order to properly dispose of the case." This leads to the second problem with *Taub*'s approach to CR 76.21, which does not reflect this Court's practice in dealing with discretionary cases.

The discretionary review rules were designed with an eye toward the Court addressing narrow issues of law in the course of reviewing the Court of Appeals' decision. This is why, for example, the motion for discretionary review rule requires the movant to provide a "clear and concise statement of (i) the material facts, (ii) *the questions of law involved,* and (iii) the specific reason or reasons why the judgment should be reviewed" CR 76.20(3) (emphasis added). If the grant of discretionary review is limited to the questions of law raised by the movant, then it makes sense to require the respondent "to file a cross motion for discretionary review designating issues raised in the original appeal which are not included in the motion for discretionary review but which should be considered in reviewing the appeal in order to properly dispose of the case." CR 76.21(1). Except in special circumstances, taking review of discrete issues is not the prevailing rule of the Court, which grants discretionary review of the whole case.

Under the Court's present rule, "issues raised in the original appeal" refers to issues leading directly to a result (or partial result), since whole cases are taken. This means that the *judgment* of the lower court is under review. If the judgment of the Court of Appeals negatively affects only the movant, why force the respondent to file an independent motion for discretionary review? It only makes sense to require the respondent to file such a motion where the judgment of the Court of Appeals affects him negatively, for example, "when the judgment fails to give the

cross-appellant all the relief he has demanded or subjects him to some degree of relief he seeks to avoid." *Brown*, 628 S.W.2d at 618. In such a case, a discretionary review movant would not be required to raise issues that are adverse to the respondent; indeed, the movant would be barred from raising such issues, since the movant *prevailed* as to that part of the judgment. Until this Court changes its rule to take review only of narrow issues of law rather than the entire judgment, *Taub*'s reading of CR 76.21 to apply to a prevailing party is simply unworkable.[5]

The better approach is to require cross-appeals and cross-motions for discretionary review only where the party is aggrieved by the lower court. This approach removes that "trap for the unwary" presented by having the opposing rules in both *Taub* and *Vester* (and related cases). It is simply unfair to litigants to have a rule that might prejudice them for their counsel's inability to negotiate between the Scylla and Charybdis of these two cases. *Vester* clearly presents the more workable and sensible rule.

This Court's conclusion regarding whether an issue is still "live" for purposes of requiring a cross-motion for discretionary review may seem somewhat at odds with the earlier portions of this opinion, which treat issues not raised at trial as procedurally defaulted. The difference, however, is that the issues we are now discussing *were raised*, both at the trial court and appellate court. The Court of Appeals simply declined to address them. As noted in *Brown*, an appellee "can ... by way of bolstering the judgment against the possibility that the appellate court may accept the appellant's claim of error, make

the point that he was nevertheless entitled to the judgment *on a theory that was properly presented* but erroneously rejected by the trial court." 628 S.W.2d at 619 (emphasis added). Judicial economy requires that a party actually raise an issue for it to be treated as live on appellate review; it does not require that a prevailing party use what amounts to a separate appeal to maintain an ongoing dispute over an issue that was raised but, for whatever reason, not decided below.

■ Consequently, to the extent that *Taub* requires a *prevailing party* to file a cross-motion for discretionary review on issues raised but not addressed by the Court of Appeals, it is overruled. There is no validity, in an initial appeal, in assuming that issues raised but not addressed by the lower court have been decided *against* a party who has won the judgment. A party may seek a review of an adverse judgment, not one in his favor. However, if an appeal is taken or a motion for discretionary review is filed against a party who prevailed in the judgment, the appellee must raise any other grounds argued to the lower court upon which he also wishes to rely in his responsive brief, if not addressed in the judgment. This is necessary to provide the reviewing court with reasonable, timely notice of these other grounds, should the court reverse on the ground or grounds relied on by the lower court.

So, the question, then, is whether any of the other reasons that John has raised in his brief, and which were raised at the trial court and Court of Appeals, support affirming the judgment of the Court of Appeals, which reversed the judgment of the trial court.

---

5. And even then, it arguably should not serve as an absolute procedural bar, since such a limit would be more a " 'matter of practice and control of our docket' " rather than of " 'our power.' " *El Paso Natural Gas Co. v.*

*Neztsosie*, 526 U.S. 473, 488 n. 3, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999) (quoting *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 226, n. 2, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975)).

## C. The Judgment of the Court of Appeals Is Supported By A Different Reason Appearing in the Record.

 John raised several issues at the Court of Appeals, which declined to reach them, and has now argued at least some of those issues before this Court as alternative grounds for affirming the decision of the Court of Appeals. One of the arguments raised as an alternative ground—that the agreement was unenforceable under the statute of frauds—is dispositive and requires that the judgment of the Court of Appeals be affirmed. As always, questions of law are reviewed de novo.

 The rule in Kentucky is that any agreement involving real property must be reduced to writing to be enforceable. *See* KRS 371.010(6) ("No action shall be brought to charge any person . . . (6) Upon any contract for the sale of real estate, or any lease thereof for longer than one year . . . unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent."). Even oral agreements as to both real property and other property not normally covered by the statute of frauds will generally be voided in their entirety. For example, "contracts to devise property in general . . . are generally regarded as entire, and not severable, unless a contrary intention appears from the contract, or unless the consideration for the devise of real property is separate and severable from the consideration for the bequest of personalty." *Bitzer v. Moock's Ex'r & Tr.*, 271 S.W.2d 877, 879 (Ky.1954).

Absent any countervailing considerations here, the agreement at issue is deemed entire; the real estate portions of the agreement are not severable. *Id.* It is the long-standing rule in this Commonwealth that "an action on an oral contract to devise property which *includes* real estate is barred by the Statute of Frauds." *Id.* (emphasis added). As such, the whole agreement, not being in writing, is unenforceable.

The jury in this case found that the agreement covered the entire estate, not just the stocks. This, of course, meant that it included the decedent's house. As such, the agreement found to exist by the jury was not enforceable. Thus, this Court concludes that the Court of Appeals, which reversed the trial court on the ground that no valid agreement had been reached because of a failure of consideration, reached the correct result but for the wrong reason.

## III. Conclusion

Though the Court of Appeals' decision improperly rested on an unpreserved issue, it nevertheless reached the correct result. Appellee raised other legal grounds to support his position in the Court of Appeals, but they were not considered by that court. As a prevailing party, it is not necessary to file a cross-motion for discretionary review in order for this Court to review those additional grounds when it finds that the Court of Appeals relied on the wrong ground, provided those grounds are raised in the brief. The parties' agreement was unenforceable under the statute of frauds and thus no action on it could be maintained. Therefore, the judgment of the Court of Appeals is affirmed.

MINTON, C.J., ABRAMSON, CUNNINGHAM and VENTERS, JJ., concur.

SCHRODER and SCOTT, JJ., concur in result only.