Randy A. MAREMA; Pamela J. Marema; and Wesley A. Marema, Appellants

v.

**FIRST FEDERAL SAVINGS BANK OF ELIZABETHTOWN, INC.,** Appellee.

No. 2011–CA–000995–MR.

Court of Appeals of Kentucky.

Oct. 12, 2012.

Rehearing Denied Dec. 14, 2012.

Discretionary Review Denied by Supreme Court Aug. 21, 2013.

Terrence L. McCoy, Louisville, KY, for appellant.

Jason B. Bell, Elizabethtown, KY, for appellee.

Before DIXON, MOORE, and THOMPSON, Judges.

*OPINION*

DIXON, Judge:

Appellants, Randy and Pamela Marema, and their son, Wesley Marema, appeal from several orders of the Hardin Circuit Court in this foreclosure action filed by Appellee, First Federal Savings Bank of Elizabethtown, Inc. ("FFSB"). The Maremas filed a counter-claim for violations of the Truth in Lending Act. After reviewing the record and applicable law, we affirm the trial court.

In the fall of 2006, Randy and Pamela Marema and their son, Wesley, visited Elizabethtown, Kentucky, for a family reunion. Because Pamela had family in Elizabethtown, the Maremas, who were Arizona residents at that time, decided to pursue relocating. Using the services of a local realtor, Mimi Hornbeck, the Maremas made offers on two upscale homes, one located on Stonemill Drive at a price of $410,000, and another located on Anniston Way at a price of $788,500. The Maremas chose to quickly sign contracts on both homes rather than first selling their two Arizona homes.

At Hornbeck's suggestion, the Maremas pursued financing through FFSB. On October 16, 2006, the Maremas signed a one-year, interest payment only loan for $1,098,500, secured by a single first mortgage on the two Elizabethtown properties and secondary mortgages on the two Arizona properties. The Maremas' goal was to sell both Arizona homes within the one year, apply the sale proceeds to the FFSB note, and then arrange permanent conventional financing on the balance owed.

Unfortunately, when the note came due one year later on October 16, 2007, the Maremas were unable to make the required payment. In response, FFSB agreed to modify the loan maturity date and gave the Maremas a 90–day extension and then two 12 month extensions. On February 25, 2008, the Maremas made a payment in the amount of $83,894.05, from proceeds of the sale of one of the Arizona properties. Nevertheless, by the fall of 2008, the Maremas were still delinquent and, on November 20, 2008, entered into a second loan with FFSB in the amount of $35,002.79 in an effort to bring them current on the accrued interest on the primary note.

On February 8, 2010, FFSB filed a foreclosure action in the Hardin Circuit Court. Thereafter, on May 14, 2010, the trial court granted FFSB's motion for summary judgment, and ordered the judicial sale of both Elizabethtown properties. However, the Maremas filed a motion to set aside the judgment due to several discrepancies as to the amount of actual debt owed. The trial court granted the motion and vacated the order pending resolution of the monetary discrepancies.

In October 2010, the Maremas were granted leave to file a counterclaim against FFSB asserting violations of the Truth in Lending Act, 15 U.S.C.A. §§ 1601 et seq. Therein, they claimed that FFSB failed to provide the statutorily required disclosure documents prior to or at the original loan closing in 2006. The Maremas alleged that had they been provided with such information, they would not have proceeded with the loan. The counterclaim sought not only statutory damages, but also actual damages and damages for emotional distress.

On January 6, 2011, the trial court granted partial summary judgment in favor of FFSB, finding the Maremas liable

on the original debt and holding that any right of rescission was barred by the three-year time limitation contained in 15 U.S.C.A. § 1635(f). However, the court noted that FFSB had all but conceded technical TILA violations due to its failure to generate the required disclosure documents. As such, the Maremas' counterclaim and the entry of an order of judicial sale were reserved so that any award to the Maremas on the counterclaim could be applied as a recoupment or set off against the debt owed to FFSB. A trial date on the Maremas' counterclaim was scheduled for February 14, 2011.

Notwithstanding the trial court's ruling that any right of rescission was time-barred, the Maremas sent a letter to FFSB on February 3, 2011, stating that due to the bank's failure to provide any TILA disclosures, they were exercising their right of rescission. The Maremas demanded the return of all loan monies paid as well as the release of the mortgage on their Arizona property.

On February 14, 2011, a bench trial was held on the Maremas' counterclaim during which the trial court heard extensive testimony and evidence. Thereafter, the court entered findings of fact and conclusions of law ruling that FFSB failed to comply with the statutory requirements for notice under TILA. Because FFSB erroneously processed the loan as a commercial loan, rather than a consumer credit transaction, the required disclosure forms were not generated. The court explained that there are three categories of damages available for TILA violations: statutory damages, actual damages, and the costs of litigation, including a reasonable attorney's fee. In accordance with 15 U.S.C.A § 1640(a)(2)(A), the trial court awarded statutory damages in the amount of $8,000.[1] However, the court awarded no actual damages as it concluded that the Maremas failed to prove that any of their asserted damages resulted from FFSB's failure to comply with the disclosure requirements:

> The failure of FFSB to include appropriate TILA disclosures is not a cause in fact of any of the actual damages claimed by the Maremas. Had the disclosures been made, the Maremas would not have cancelled the deal and gone back to Arizona; they would have followed through on the deal and suffered the same damages. Whether the damages in question are closing costs, moving expenses, emotional distress, or scratches to the Maremas' Lexus and Steinway sustained in the transport back to Arizona, those damages were not caused by the lack of TILA disclosures.

Finally, the Maremas were awarded costs and fees in the amount of $10,000.

The Maremas thereafter filed a motion to alter, amend or vacate, challenging several aspects of the trial court's findings of

---

1. Under TILA, a borrower is eligible to receive statutory damages of not less than $400 and not more than $4,000 for each loan. 15 U.S.C.A. § 1640(a)(2)(A)(iv). The trial court noted that in an individual action, such as the instant case, the court does not have discretion in the amount awarded:

> "The specification of statutory damages in clause (i) of twice the finance charge continues to apply to loans secured by real property." [*Koons Buick Pontiac GMC, Inc. v. Nigh,* 543 U.S. 50, 62, 125 S.Ct. 460,

160 L.Ed.2d 389 (2004).] The damages set by that basic rule are subject to the limitations in 15 U.S.C.A. § 1640(a)(2)(A)(iv) of "not less than $400 or greater than $4,000."

(March 11, 2011 Findings of Fact, Conclusions of Law, Judgment on Counterclaim and Order of Sale). Accordingly, because twice the finance charge on each loan exceeded $4,000, the Maremas were awarded the statutory maximum.

fact and conclusions of law. In a subsequent order, the trial court amended its findings to correct several discrepancies. Further, the court agreed with the Maremas that they established a separate third TILA violation when FFSB failed to make a truth-in-lending disclosure at the time an interest rate change was implemented on the primary loan. As such, the court amended the award of statutory damages to $12,000. Finally, the trial court recognized that under TILA, costs must be stated separately. Thus, the court ruled that the Maremas were entitled to $10,000 in attorney's fees and $1,270.30 in costs. The trial court rejected all other issues raised by the Maremas. They thereafter appealed to this Court as a matter of right.

On appeal, the Maremas first argue that the trial court erred in finding that their right to rescind the loan transaction was time-barred. The Maremas concede that TILA contains a three-year time limitation for rescission. Nevertheless, they maintain that the original 2006 loan, the 2007 change of terms agreement, and the 2008 loan for $35,002.79 were all part of one transaction. Accordingly, they contend that the loan was not "consummated" until November 2008. And, as such, their letter to FFSB in February 2011 was a timely rescission. We disagree.

Congress enacted the Truth in Lending Act ("TILA") in 1968 in order to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit...." 15 U.S.C.A. § 1601(a). The Act and its implementing regulation-drafted by the Federal Reserve Board of Governors and commonly known as "Regulation Z" (12 C.F.R. § 226.1 et seq.)—require creditors to disclose "clearly and conspicuously," in writing and in a form that the borrower may keep, specific information pertaining to credit transactions. *See* 15 U.S.C.A. §§ 1632(a), 1635(a); 12 C.F.R. §§ 226.17, 226.18. If a creditor fails to make the required disclosures, the Act provides for a private right of action for statutory and actual damages. 15 U.S.C.A. § 1640(a)(1). In addition to damages, the borrower may also be entitled to collect costs and attorney's fees. 15 U.S.C. § 1640(a)(3). Under certain limited circumstances, the borrower may even rescind the loan agreement or assert a right of set-off.

As the trial court noted, TILA violations generally must be asserted within one year of the alleged violation. However, 15 U.S.C.A. § 1640(e) expressly provides that the Act's one-year limitation on actions for recovery of damages "does not bar a person from asserting a violation ... in an action ... brought more than one year from the date of the ... violation as a matter of defense by recoupment or set-off[.]" Thus, the Maremas were entitled to assert a counterclaim in the foreclosure action for a recoupment, or set-off, from the debt owed.

Significantly, however, 15 U.S.C.A. § 1635 provides in pertinent part:

(f) An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor[.]

■ Unlike § 1640(e), the three-year period for rescission contained in § 1635(f) is not a statute of limitation that governs only the institution of suit; instead, it completely extinguishes the right of rescission at the end of the 3–year period. In *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 417, 118 S.Ct. 1408, 1412, 140 L.Ed.2d 566

(1998), the United States Supreme Court emphasized:

> Section 1635(f), however, takes us beyond any question whether it limits more than the time for bringing a suit, by governing the life of the underlying right as well. The subsection says nothing in terms of bringing an action but instead provides that the "right of rescission [under the Act] shall expire" at the end of the time period. It talks not of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous. There is no reason, then, even to resort to the canons of construction that we use to resolve doubtful cases, such as the rule that the creation of a right in the same statute that provides a limitation is some evidence that the right was meant to be limited, not just the remedy. (Citations omitted).

Thus, the *Beach* Court's unequivocal holding is that "§ 1635(f) completely extinguishes the right of rescission at the end of the 3–year period." *Id.* at 412, 118 S.Ct. at 1409.

■ We find no merit in the Maremas' argument that the three separate transactions effectively extended the consummation date of the original loan. The loan for $1,098,500 was signed on October 16, 2006. One year later, in an effort to help the Maremas, FFSB agreed to modify the loan maturity dates, thus extending the time to make the required payments. When such was to no avail, the parties entered into a second loan in November 2008, for the amount of $35,002.79 solely to cover the accrued interest on the primary note. The second loan was a separate transaction with a different loan number and interest rate. Notably, even Randy Marema testified at trial that he was aware the parties had entered into two separate, distinct loans.

■ As noted by the Sixth Circuit Court of Appeals, "consummation" occurs when a borrower signs the loan documents and becomes obligated to pay. *United States v. Petroff–Kline*, 557 F.3d 285, 296 (6th Cir.2009). In this case, that occurred when the Maremas signed the original loan in October 2006. Thus, under the plain language of TILA, the Maremas' right of rescission was completely extinguished in October 2009. To hold otherwise would create endless uncertainty with mortgages and cause chaos in the banking industry. As noted by the *Beach* Court, "[s]ince a statutory right of rescission could cloud a bank's title on foreclosure, Congress may well have chosen to circumscribe that risk[.]" *Beach*, 523 U.S. at 418–19, 118 S.Ct. at 1413. Thus, we conclude that the trial court did not err in finding that the Maremas' right to rescission was time-barred.

■ The Maremas next claim that the trial court erred by failing to award any actual damages. Specifically, the Maremas claimed damages for moving expenses, IRA withdrawals (used to make an interest payment), closing costs, proceeds from the sale of the Arizona property, and Pamela's alleged emotional distress. In fact, the Maremas claimed itemized damages at the time of trial in the amount of $319,944.27, with an additional $65,256.48 in interest.

■ To state a claim for actual damages under TILA, the alleged damages must be properly supported by evidence and must directly relate to the non-disclosure. Further, proof of actual damages under TILA requires a showing of detrimental reliance. "To establish detrimental reliance, the debtor must demonstrate that he or she would either have received a

better interest rate for the loans elsewhere or would have elected not to take the loan had the required information been available." *United States v. Petroff–Kline,* 557 F.3d 285, 297 (6th Cir.2009) (citation omitted); *Stout v. J.D. Byrider,* 228 F.3d 709, 718 (6th Cir.2000)

As the trial court concluded, the Maremas did not demonstrate that they would have received a better interest rate elsewhere. Nor do we find that they proved that had they been provided the disclosure forms, they would have not agreed to the terms of the 2006 loan. It is quite evident from the record herein that, despite not having received the required forms, the Maremas were well-aware and very knowledgeable about the terms and conditions of the loan. There are numerous pre-closing communications between the parties discussing intricate details of the transaction. Like the trial court, we simply cannot conclude that the Maremas were naive about the terms of the loan and would not have proceeded had they reviewed the disclosure forms.

As Randy Marema conceded at trial, their claims for actual damages were "a lot of maybes and could bes." While no one disputes that the Maremas spent enormous sums of money above and beyond the cost of the mortgage itself, we are of the opinion that the trial court properly concluded that those sums and claimed damages did not result from FFSB's failure to provide the TILA disclosure forms.

▪ Finally, the Maremas argue that the trial court erred in only awarding $10,000 in attorney's fees. In their brief, the Maremas state, "Since the Appellant's herein believe that they successfully re-

scinded this loan and tendered the equivalent of the amount lent to them, and that they were entitled to actual damages, this Court should award a substantial increase in attorney's fees to the Appellant's attorney." As previously noted, we do not agree that they successfully rescinded the loan or satisfied their burden of proving actual damages.

TILA provides that if a plaintiff succeeds on part of the counterclaim, they are entitled to "the costs of the action, together with a reasonable attorney's fee as determined by the court[.]" 15 U.S.C.A. § 1640(a)(3). At trial, the Maremas provided documentation for costs and fees totaling $40,364.32. In awarding attorney's fees, the trial court noted that federal courts applying TILA have used the test promulgated in *Hensley v. Eckerhart,*[2] 461 U.S. 424, 436, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983), for the determination of reasonable attorney's fees:

> If ... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.... [T]he most critical factor is the degree of success obtained.

The trial court observed that while the Maremas were successful in obtaining statutory damages for FFSB's failure to provide the required TILA disclosures, they did not prove any actual damages. Thus, in a counterclaim on a debt of over one million dollars, they recouped $12,000. Based on that limited success, the trial

---

**2.** Although in *Hensley,* the issue of attorney's fees was brought in the context of the Civil Rights Attorney's Fees Awards Act of 1976, the Supreme Court made clear that "[t]he standards set forth in this opinion are gener-

ally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939, n. 7.

court ruled that $10,000 in attorney's fees was reasonable.

We conclude that the trial court applied the proper factors in awarding the Maremas attorney fees. Certainly, in light of their limited success on the counterclaim, an award of 25% of their claimed attorney's fees is reasonable. By way of comparison, FFSB was only awarded $12,368.91 of its claimed $21,149.91 in fees despite language in the loan agreement and promissory note allowing a recovery of 100% upon default. The trial court was within its discretion in making the award of attorney's fees to both parties.

For the reasons set forth herein, the orders of the Hardin Circuit Court are affirmed.

ALL CONCUR.