**SERVICE FINANCIAL COMPANY, Appellant**

v.

**Ashley Nicole WARE, a/k/a Ashley Nichole Ware, Appellee**

NO. 2013–CA–002121–DG

Court of Appeals of Kentucky.

RENDERED: JULY 24, 2015; 10:00 A.M.

Brief for Appellant: David R. Deatrick, Jr., Amanda L. Baker, Louisville, Kentucky

No Brief for Appellee

BEFORE: ACREE, CHIEF JUDGE; STUMBO AND TAYLOR, JUDGES.

*OPINION*

ACREE, CHIEF JUDGE:

We granted discretionary review in this case to address Service Financial Company's appeal of the Franklin Circuit Court's November 22, 2013 opinion affirming a Franklin District Court order of default judgment that limited post-judgment interest on a retail installment contract to 12% per annum. The Appellant briefed the issues; the Appellee did not file a brief. On April 10, 2015, for reasons stated hereinafter, the Court rendered an opinion affirming the trial court.

PETITION FOR REHEARING

Before proceeding to address the issues properly before us, we note and will address the fact that, on April 30, 2015, the Appellant filed a petition for rehearing pursuant to Kentucky Rule of Civil Procedure (CR) 76.32. That rule states, in pertinent part:

> Except in extraordinary cases when justice demands it, a petition for rehearing shall be limited to a consideration of the issues argued on the appeal and will be granted only when it appears that the court has overlooked a material fact in the record, or a controlling statute or decision, or has misconceived the issues presented on the appeal or the law applicable thereto.

CR 76.32(1)(b).

Claiming this Court overlooked a material fact in the record, Appellant asserts that a provision of the retail installment contract is decisive of this case in its favor. Appellant's petition states:

> In Section 7 of the "Additional Terms and Conditions" of the Retail Installment Contract Ms. Ware signed, it ex-

plicitly states "In the event the Seller obtains a judgment against the Buyer, or any one or more of them, said judgment shall bear interest at the same Annual Percentage Rate as stated on the front side hereof [15%][1]."

Appellant quotes this passage from "Exhibit '2'" appended to the petition, although there is no citation to the certified record in the body of the petition or on the exhibit. After careful consideration, we conclude this paragraph presents a different issue than that presented to this Court in the Appellant's original brief.

As more fully explained below, the issue presented by this case is whether the Appellee agreed to pay the accrual of interest at the rate of 15% or a finance charge not considered interest under Chapter 190 of the Kentucky Revised Statutes (KRS) addressing retail installment sales of motor vehicles. Appellant is correct that we did not address the impact of Section 7 of the contract on our analysis. Had we been aware of this language, the analysis (even if not the outcome) likely would have been different.

Concerned that this Court had, in fact, overlooked a material fact in the record, we directed our attention to Appellant's two-page "Exhibit '2'" attached to the petition. It is a copy of the front and back of the pre-printed Retail Installment Contract.

The copy of the front page is reasonably legible in its essential terms, including the bold and large-print section stating *"ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate 15%."* A highlighted provision on the front page incorporates by reference additional terms printed on the back of the form contract. The Appellee's signature appears at the bottom of this front page.

The back page is in a font size and type that is largely illegible, at least on the copy attached as "Exhibit '2'" to the petition.[2] Despite its degree of illegibility, we took for granted that Appellant accurately quoted that language from its own exhibit.

Still, two important questions remained. First, did the certified record include this second page of pre-printed boilerplate terms typical of such adhesion contracts? Second, was this one of the issues argued on the appeal; that is, had Appellant previously made this argument in its original brief to this Court by citing this language as it did in the petition for rehearing?

The record is smaller than most and that allowed us to scour it for a copy of this second page of the contract.[3] We found it four times in the record. The first is at page 16 and it is attached to a memorandum of law. The second is at page 25, attached to the district court complaint. The third is at page 45, attached to the Statement of Appeal in the circuit court. Immediately thereafter, at page 46, the page appears for a fourth time. The fact that this final copy of the page is enlarged to improve its legibility is revealing.

Having assured ourselves that the Appellant's petition for rehearing did not reference matters outside the certified record, we moved on to see how the Appellant addressed that provision in the original brief on appeal. We readily saw that the

1. The Court added to this quotation the Annual Percentage Rate from the front page of the contract for clarification.

2. It is possible this copy was sized smaller to fit an 8½ by 11 inch page.

3. Typically, "[i]t is not the job of the appellate courts to scour the record in support of an appellant['s] or cross-appellant's argument." *Dennis v. Fulkerson,* 343 S.W.3d 633, 637 (Ky.App.2011).

legal import of "Section 7 of the 'Additional Terms and Conditions' of the Retail Installment Contract" was not one "of the issues argued on the appeal[.]"

Carefully reading the body of the Appellant's brief again, we see that a total of eleven pages of the record are cited. They are pages 35 through 42 and pages 56 through 58. Neither the contract provision relied upon in the petition for rehearing, nor the page on which it appears, can be found among those pages.

■ However, Appellant did include an appendix to the brief. A copy of both front and back of the Retail Installment Contract is appended as Exhibit 5. And, in compliance with CR 76.12(4)(d)(v), there is a listing of these exhibits. The listing indicates that Exhibit 5 was taken from pages 44, 45, and 46 of the record. But the exhibit itself is only two pages. Because it is not marked with the circuit court clerk's page numbering, we cannot tell whether the Exhibit is actually taken from pages 15–16, or pages 24–25, or pages 44–45 of the certified record.[4] Despite its specific reference in the appendix listing, the enlarged and more legible copy of the back page of the contract appearing in the record at page 46 is not included in Exhibit 5. More importantly, neither the back page of the contract generally, nor Section 7 specifically, is ever referenced in the original brief.

The heart of the problem is that Appellant never argued, in its initial brief before this Court, that this single sentence, quoted above from the petition and nestled as it was among the 82 lines of boilerplate on the back of the form contract, controlled this issue. Rather, the brief's only reference to the basis of the Appellee's liability is the "contractually agreed interest rate of 15.000%[.]"[5] That figure appears on the first page in bold type to assure its conspicuousness. That argument—whether by signing a retail installment contract Appellee agreed to pay 15% interest on her unpaid balance—is what this Court addressed in its opinion.

This case thus determines whether that figure on the first page of the retail installment contract represents an agreed-upon interest rate or simply "The cost of your credit as a yearly rate"[6] under KRS Chapter 190. All of that analysis, presented below, is necessarily prefatory to the new issue raised in the petition for rehearing. That new issue is this: notwithstanding our conclusion that Appellee agreed to pay a finance charge as defined by KRS 190.090(10) and not interest, can a seller nevertheless bind a buyer to pay post-judgment interest at a higher-than-statutory rate in a separate section of the contract? That issue was never presented to us and is not before us now. It would necessarily require, among other things, consideration of whether such a contract provision would be subject to the conspicuousness requirements of the federal Truth

---

4. It appears that appellant's counsel engaged in the not-uncommon practice of creating an appendix from counsel's file and citing that appendix in the body of the brief. Such practice does not satisfy the requirements of CR 76.12(4)(c)(iv) and (v).

5. The Appellant's brief lacks pagination. This quote is from the twelfth page of Appellant's brief. Although general reference is earlier made to the fact that Appellee signed the retail installment contract, this line is the first time the brief identifies the legal basis of Appellant's claim that Appellee obligated herself to pay interest on the price of the vehicle she purchased.

6. This phrase quoted from the front of the retail installment contract in the highlighted section identifying the "Annual Percentage Rate."

in Lending Act, 15 U.S.C.[7] 1601 *et seq.* ("TILA"). *See Marema v. First Federal Savings Bank of Elizabethtown, Inc.,* 405 S.W.3d 512, 515–16 (Ky.App.2012). And that issue was never before us either, and it is not before us now.

■ "[E]rror raised for the first time in a petition for rehearing will not be considered"—"failure to raise it in the original briefs would have amounted to a waiver." *Johnson v. Commonwealth,* 450 S.W.3d 707, 713 (Ky.2014) (citations omitted). Appellant has waived this argument.

■ Appellant raises a second ground for granting rehearing in this case: our failure to consider TILA in our original analysis. Again, however, the original brief did not address TILA in any way, and particularly how it bears on the issue presented then. "It is incumbent upon the appellant to present to this Court before submission all of his grounds for reversal. Questions . . . not argued in the briefs, will not be considered by the Court of Appeals." *Herrick v. Wills,* 333 S.W.2d 275, 276 (Ky.1960) (citation omitted). We are confident our original opinion does not conflict with TILA. Regardless, Appellant has also waived this argument.

■ Finally, with regard to this petition for rehearing, we note the exception in CR 76.32(2) that these limitations on the availability of a rehearing will not apply "in extraordinary cases when justice demands it[.]" CR 76.32(2). We do not believe this is such a case. First, the amount of money involved is small; by our calculation the first year's lost interest, calculated at 12% instead of 15% is $117.89.[8] Second, no one represented Appellee's interest in having the circuit court's opinion affirmed and she filed no brief on her own. If we were to address the issues Appellant raises for the first time in the petition for rehearing, our decision would not have the benefit of the adversarial process. In short, this is not an extraordinary case and justice does not require that we treat it as such.

For the foregoing reasons, we have entered a separate and contemporaneous order denying the petition for rehearing, but modifying our opinion to include the foregoing analysis. Having thusly addressed the petition for rehearing, we again affirm the Franklin Circuit Court's opinion affirming the Franklin District Court's default judgment.

## FACTS, PROCEDURE AND ANALYSIS

The Appellant is the assignee of a Retail Installment Contract. Appellee Ashley Ware executed that contract, thereby agreeing to pay a certain sum of money in exchange for a used automobile. She failed to perform as promised. Appellant brought suit in Franklin District Court to collect the balance owed and Ware failed to respond to the complaint.

Appellant moved for a default judgment claiming the amount Ware owed was a liquidated sum and claiming pre-judgment and post-judgment interest at the rate of 15% per annum. Without ruling whether the amount Ware owed was liquidated or unliquidated, the district court denied the claim of 15% post-judgment interest and allowed only 12% post-judgment interest. Appellant appealed that judgment to Franklin Circuit Court.

Appellant argued before the circuit court that KRS 360.040 requires that when a judgment is "rendered for accruing interest on a written obligation, it shall bear interest in accordance with the instrument

7. United States Code.

8. Based on the judgment amount of $3,929.76.

reporting such accruals...." KRS 360.040. The amount owed, claimed Appellant, was a liquidated sum bearing interest according to the contract of 15% and that the statute mandated an award of post-judgment interest at the rate of 15%. The circuit court disagreed.

That court held that "[t]he initial claim was for unliquidated damages and then the District Judge reduced the claim to a judgment, thus the District Judge had the discretion to set a reasonable interest rate" which it did at 12%. Thus, the circuit court interpreted the district court judgment first as being based on the factual finding that Appellant's damages claim was unliquidated. Second, applying KRS 360.040, the circuit court concluded that "when a claim for unliquidated damages is reduced to judgment, such judgment may bear less interest than twelve percent (12%) if the court rendering such judgment, after a hearing on that question, is satisfied that the rate of interest should be less than twelve percent (12%)." KRS 360.040.

 If the district court had expressly found that the damage claim was unliquidated, we would be compelled to reverse that finding. Liquidated damages are those which are "[m]ade certain or fixed by agreement of parties or by operation of law." *Nucor Corp. v. General Elec. Co.,* 812 S.W.2d 136, 141 (Ky.1991); *3D Enterprises Contracting Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist.,* 174 S.W.3d 440, 450 (Ky.2005). A classic example of liquidated damages is "an unpaid fixed contract price." *Nucor,* 812 S.W.2d at 141. The damages in this case were at all times determinable, fixed, non-speculative, and clear. "Mere computation" was all that was needed to establish with "reasonable certainty" the damages owed from "an unpaid fixed contract price." *3D En-*

*terprises,* 174 S.W.3d at 450. The claim was liquidated.

 However, this does not justify reversing the district court judgment. "[T]he judgment of a lower court can be affirmed for any reason in the record." *Fischer v. Fischer,* 348 S.W.3d 582, 591 (Ky.2011) (citations omitted). We affirm the district court's judgment on the alternative ground that the contract sued upon is a Retail Installment Contract in which Ware agreed to pay a finance charge but did not agree to the accrual of interest at any rate, much less a rate in excess of that stated in KRS 360.040.

To further explain our reasoning, we consider the transaction and applicable law more closely.

In 2010, Ware purchased a 1998 Nissan automobile for $5,995.00. The transaction was memorialized in a Retail Installment Contract. Such contracts are governed by KRS 190.090 to KRS 190.140. Those statutes include the following definition:

> "Retail installment contract" means any agreement, entered into in this state, evidencing a retail installment sale of a motor vehicle, other than for the purpose of resale, pursuant to which title to, or a lien upon the motor vehicle is retained by the retail seller as security for the retail buyer's obligation. This term includes a mortgage, conditional sale contract or any contract for the bailment or leasing of a motor vehicle by which the bailee or lessee contracts to pay as compensation for its use a sum substantially equivalent to the *time sale price* of the motor vehicle and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming for no additional consideration or for nominal additional consideration, the owner of such motor vehicle....

KRS 190.090(3) (emphasis added).

Ware's Retail Installment Contract included a "Finance Charge" of $1,182.65

which she was to pay in addition to the "Cash Price" of the vehicle listed on the contract as $5,995.00. The term "Finance Charge" is also defined by statute.

> "Finance charge" means that part of the *time sale price* by which it exceeds the aggregate of the cash sale price, the amount, if any, included for insurance and other benefits and official fees included in the retail installment sale;

KRS 190.090(10) (emphasis added).

Both these definitions employ the term "time sale price" which is defined in the chapter of the Kentucky Revised Statutes governing contracts of all kinds, Chapter 371.

> "Time sale price" means the total of the cash sale price of the goods or services and the amount, if any, included for insurance, if a separate identified charge is made therefor, and the official fees and the *time price differential.*

KRS 371.210(12) (emphasis added). And "time price differential" is also defined by this statute.

> "Time price differential" *however denominated or expressed,* means the amount which is paid or payable for the privilege of purchasing goods or services to be paid for by the buyer in installments over a period of time. It does not include the amount, if any, charged for insurance premiums, delinquency charges, attorneys fees, court costs, or official fees.

KRS 371.210(9) (emphasis added).

In Ware's contract, the time price differential was "denominated or expressed" as a finance charge of $1,182.65. This sum was calculated by the dealer who sold Ware the vehicle in accordance with KRS 190.110; the dealer applied the maximum permissible finance charge. That statute states in part:

The finance charge allowed by this subsection may be precomputed by using an add-on method. If the finance charge in a retail installment sale is precomputed it shall not exceed the following rates: Class 1. Any new or used motor vehicle designated by the manufacturer by a year model not earlier than the year in which the sale is made—eleven dollars ($11) per one hundred dollars ($100) of principal balance, as determined pursuant to KRS 190.100(2), per year of the contract.

Class 2. Any new motor vehicle not in class 1 and any used motor vehicle designated by the manufacturer by a year model of one (1) or two (2) years prior to the year in which the sale is made—thirteen dollars ($13) per one hundred dollars ($100) of principal balance, as determined pursuant to KRS 190.100(2), per year of the contract.

Class 3. All other motor vehicles not in class 1 or 2—fifteen dollars ($15) per one hundred dollars ($100) of principal balance, as determined pursuant to KRS 190.100(2), per year of the contract.

KRS 190.110(1). Because Ware's vehicle was not new and was manufactured more than two (2) years prior to the sale, the vehicle was categorized as a Class 3 vehicle. This allowed the time price differential, denominated as a finance charge, to "be precomputed by using an add-on method [at] fifteen dollars ($15) per one hundred dollars ($100) of principal balance . . . per year of the contract[.]" *Id.* In conformity with this law, the Retail Installment Contract set the time price differential, stated in the contract as the "Annual Percentage Rate," at "15%."

Although KRS 190.110(4) authorizes that, "[a]lternatively [to the time price differential method of calculating the finance charge], the seller may, at his option, compute the finance charge . . . on a simple

interest basis," Ware's seller did not so elect. This contract bore no interest—only a time price differential.

There are only two circumstances under which a court may deviate from the statutory post-judgment interest rate of 12% expressed in KRS 360.040. One circumstance is where the claim is for unliquidated damages. The claim here was for liquidated damages; therefore, this is not a basis for awarding other than 12% post-judgment interest. The second circumstance is where a party has agreed to "accruing interest on a written obligation [in which case] it shall bear interest in accordance with the instrument reporting such accruals...." KRS 360.040. Ware did not agree to accruing interest in the Retail Installment Contract; she did not sign an instrument reporting the accrual of interest at any rate. She agreed only to purchase a vehicle at a price determined by adding (1) the cost of the vehicle if she had paid cash and (2) the time price differential.

## CONCLUSION

For the foregoing reasons, we affirm the Franklin Circuit Court's Opinion and Order affirming the Franklin District Court's March 29, 2013 default judgment.

ALL CONCUR.