RENDERED: FEBRUARY 26, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

MODIFIED: MARCH 5, 2021; 10:00 A.M.

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1325-MR

GREGORY CRANDELL                                                   APPELLANT

APPEAL FROM BULLITT CIRCUIT COURT
v.            HONORABLE MONICA K. MEREDITH, JUDGE
ACTION NO. 17-CI-00357

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND FAMILY SERVICES
EX REL. MARY J. DILKE                                             APPELLEE

OPINION
AFFIRMING IN PART,
REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, MAZE, AND MCNEILL, JUDGES.

MCNEILL, JUDGE: Gregory Crandell ("Crandell") appeals from the Bullitt

Circuit Court's July 30, 2019 amended order finding him in contempt for failing to

pay child support. For the reasons set forth herein, we affirm in part, reverse in part, and remand for further proceedings.

## Background

In July 1997, the Superior Court in Contra Costa County, California ordered Crandell to pay child support in the amount of $391.00 per month for his two minor children. In April 2017, a UIFSA[1] petition was filed in the Bullitt Circuit Court requesting that Bullitt County enforce the California child support order. On September 1, 2017, the Commonwealth filed a motion for default judgment, and on September 8, 2017, the circuit court entered a default judgment for child support arrears and repayment, ordering that Crandell pay $391.00 per month towards an arrearage amount of $115,760.00.

On May 3, 2018, the Commonwealth filed a motion to hold Crandell in contempt for failure to pay child support. Crandell failed to appear for the contempt hearing and was subsequently arrested pursuant to a bench warrant. On March 26, 2019, a brief hearing was held where the court found Crandell to be indigent and appointed a public defender to represent him. Prior to the contempt hearing, Crandell moved for work release so that he could search for a job to begin paying the child support arrears, representing to the court that despite his physical disability, he believed he could find a job.

---

[1] Uniform Interstate Family Support Act, Kentucky Revised Statutes (KRS) 407.5101, *et seq.*

The contempt hearing was held on July 16, 2019. At the hearing, Crandell did not challenge the validity of the child support order or the amount of the arrears, but instead argued his disability prevented him from complying with the child support order. Crandell presented evidence from Ramona Jackson, a supervisor at Volunteers of America's Housing Stabilization Program, and Vanessa Nagle, a housing specialist for the Louisville Metro Department of Community Services, concerning his disability. Both Jackson and Nagle testified Crandell was part of a program funded by the Department of Housing and Urban Development to provide housing for the homeless. To qualify for the program, a person must have a disability, be homeless, and have low income.

Crandell introduced evidence that on September 20, 2016, a nurse practitioner determined he had a physical disability, qualifying him for the housing program. Crandell tendered a verification form completed by the nurse practitioner, noting that Crandell's physical disability is "of long-continuing or indefinite duration," "substantially impede[s] [Crandell's] ability to live independently," and "[c]ould . . . improve[] by the provision of more suitable housing conditions." The form is silent on the nature of the disability or its impact on Crandell's ability to work.

Nagle testified she did not believe Crandell has held a job at any time while participating in the program based upon the fact that his only listed income

when he applied for the program was from the Kentucky Transitional Assistance Program (K-TAP). Nagle stated Crandell has two dependent children living with him. Nagle further testified Crandell now receives disability income in addition to K-TAP, but there was no testimony as to the amount of the benefit.

Crandell did not testify at the hearing, and no evidence was presented concerning Crandell's income, expenses, or work history. On July 22, 2019,[2] the court entered an order finding Crandell in contempt for failure to make regular payments towards his child support arrearage of $126,691.25. The court noted Crandell's "physical impairment of long or indefinite duration," but it found Crandell had not proven his disability prevented him from working. The court pointed to Crandell's request for work release while incarcerated as evidence of his ability to work. It also found Crandell had a reliable automobile to transport him to and from work. However, the court reduced Crandell's monthly payment from $391.00 to $251.00, in consideration of his recent incarceration and economic circumstances.

As a remedy for Crandell's contempt, the circuit court sentenced him to serve twenty days in jail for each month he fails to pay his child support, including the current month. The court ruled it would hold the sentence in

---

[2] The circuit court subsequently entered an "Amended Order" on July 30, 2019, reflecting that Crandall, who was in custody at the time of the hearing, had been released by separate order.

abeyance until the tenth day of the following month, so if Crandell made his payment that month, he would not have to serve the sentence. It also provided that if Crandell provided proof of employment when he reported to the jail, he would be granted work release for up to twelve hours a day, five days a week. This appeal followed.

## Standard of Review

"We review the trial court's exercise of its contempt powers for abuse of discretion, but we apply the clear error standard to the underlying findings of fact." *Commonwealth*, *Cabinet for Health and Family Servs. v. Ivy*, 353 S.W.3d 324, 332 (Ky. 2011) (citations omitted).

## Analysis

Crandell contends the circuit court abused its discretion when it found him in contempt for failing to pay child support because his disability prevents him from complying with the order. We disagree.

> A trial court . . . has broad authority to enforce its orders, and contempt proceedings are part of that authority. Contempt sanctions are classified as either criminal or civil depending on whether they are meant to punish the contemner's noncompliance with the court's order and to vindicate the court's authority and dignity, or are meant to benefit an adverse party either by coercing compliance with the order or by compensating for losses the noncompliance occasioned.

*Ivy*, 353 S.W.3d at 332 (citation omitted). Here, the contempt proceeding was civil since it was meant to coerce Crandell to comply with his child support obligation.

The burden in a civil contempt proceeding is initially "on the party seeking sanctions to show by clear and convincing evidence that the alleged contemnor has violated a valid court order[,]" as well as to prove any amounts sought in compensation. *Id.* (citing *Roper v. Roper*, 242 Ky. 658, 47 S.W.2d 517 (1932)). Once a movant makes a *prima facie* case, "a presumption of contempt arises, and the burden of production shifts to the alleged contemnor to show, clearly and convincingly, that he or she was unable to comply with the court's order or was, for some other reason, justified in not complying." *Id.* (citing *Clay v. Winn*, 434 S.W.2d 650 (Ky. 1968)). As noted in *Ivy*, "[t]his burden is a heavy one and is not satisfied by mere assertions of inability. The alleged contemnor must offer evidence tending to show clearly that he or she made all reasonable efforts to comply." *Id.* (citations omitted).

At the hearing, Crandell did not dispute the existence of the order or the amount owed. The burden was his, therefore, to show he was unable to comply with the child support order. Here, while Crandell put on evidence that he had a disability, this evidence alone is insufficient to show clearly and convincingly that he was unable to comply with the child support order. *See Ivy*, 353 S.W.3d at 333 (holding that finding of disability by Social Security Administration (SSI) does not

-6-

compel finding of inability to comply with order).  Crandell offered no evidence that his disability prevents him from being employed.  While he introduced a form stating he had a physical impairment of long or indefinite duration, the form said nothing about the nature of his physical impairment, or that this impairment prevented him from working.

The circuit court found Crandell's recent request to be released from jail to work and/or search for a job as evidence of his ability to work.  The court also noted Crandell had reliable transportation.  The burden was on Crandell "to show clearly that he . . . made all reasonable efforts to comply."  *Id.* at 332 (citation omitted).  We hold the circuit court did not abuse its discretion in finding Crandell in contempt for failing to comply with the child support order.

"Having found a party in contempt, the court's next task is to fashion a remedy."  *Id.* at 334.  Crandell has not challenged the circuit court's sanction on appeal; therefore we decline to address it.[3]  *Serv. Fin. Co. v. Ware*, 473 S.W.3d 98, 103 (Ky. App. 2015) ("Questions . . . not argued in the briefs, will not be considered by the Court of Appeals.") (citation omitted).

---

[3] However, we would note the sanction is nearly identical to the one our Supreme Court held invalid in *Commonwealth*, *Cabinet for Health and Family Services v. Ivy*, 353 S.W.3d 324, 335 (Ky. 2011).

Finally, Crandell argues that the court erred in assessing him a $100 partial public defender fee after finding him indigent. Crandell has not preserved this issue for appeal but requests palpable error review under CR[4] 61.02. We agree with Crandell that the circuit court erred in imposing attorney fees "as it did not conduct a nonadversarial hearing to determine whether [Crandell] had the present ability to pay for his legal representation as required by KRS 31.211(1)." *Applegate v. Commonwealth*, 577 S.W.3d 83, 88 (Ky. App. 2018) (citing *Maynes v. Commonwealth*, 361 S.W.3d 922, 929 (Ky. 2012)).

Further, in *Spicer v. Commonwealth*, 442 S.W.3d 26, 34 (Ky. 2014), our Supreme Court held, under similar circumstances, that a trial court erred in imposing a public defender fee on a defendant found to be indigent and granted *in forma pauperis* status on appeal:

> Appellant in this case was represented by a public defender at the time of sentencing, and was granted *in forma pauperis* status on appeal. Thus, it is clear his indigency continued throughout trial. There is simply no record of any hearing in which the trial court later found good cause to determine the defendant should not continue to be considered an indigent person. Thus, without such findings, the court's imposition of a $450.00 attorney fee was improper, and we now vacate it.

*Id.* at 34-35.

---

[4] Kentucky Rules of Civil Procedure.

Crandell was previously found to be indigent by the circuit court and subsequently granted *in forma pauperis* status on appeal. His indigency continued throughout the proceeding, and there was never any finding of good cause determining he should no longer be considered indigent. Therefore, the court erred in imposing the partial public defender fee.

**Conclusion**

For the foregoing reasons, we affirm the order of the Bullitt Circuit Court as to the finding of contempt, reverse as to the imposition of the $100 public defender fee, and remand for entry of an order consistent with this opinion.

CALDWELL, JUDGE, CONCURS.

MAZE, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

MAZE, JUDGE, DISSENTING: Respectfully, I dissent from that portion of the majority opinion concluding that the family court did not abuse its discretion in holding Crandell in contempt for failing to comply with its prior judgment requiring him to pay $391.00 per month toward the child support arrearage of $126,691.25. In *Lewis v. Lewis*, our Supreme Court recognized "the inherent power of the trial court to enforce its judgment by means of incarceration of a person who is found in contempt of the lawful orders of the court." 875 S.W.2d 862, 864 (Ky. 1993). However, the *Lewis* Court also cautioned that "[s]uch action

-9-

is extraordinary and subject to certain limitations. *The contempt power should not be used to require the doing of an impossible thing*." *Id*. (emphasis added).

As the majority notes, the family court heard evidence of Crandell's physical impairment of long or indefinite duration, supported by the testimony of two witnesses who testified that Crandell qualified for benefits from a program funded by the Department of Housing and Urban Development which required a showing that he had a disability, was homeless, and had low income. Crandell submitted a verification form for that program which had been completed by a nurse practitioner attesting to the fact that his physical disability was of long-continuing or indefinite duration and that his disability substantially impeded his ability to live independently. As the majority states, the family court also heard testimony from a housing specialist for Louisville Metro Department of Community Services that she did not believe Crandell had held a job at any time while participating in the program; that his only listed income when he applied for the program was from the Kentucky Transitional Assistance Program; and that he is now receiving disability income in addition to the K-TAP benefits. Although, as the majority states, there was no testimony as to the amount of that benefit, nor was there evidence as to Crandell's income, expenses, or work history, I am nevertheless convinced that the evidence he produced was sufficient to preclude a finding that he had the ability to comply and thus avoid incarceration. I am also

convinced that nothing in the caselaw we are bound to follow requires specific evidence in order to avoid incarceration for contempt. Because I am convinced that the family court clearly erred in predicating its finding of contempt solely on Crandell's request to be released from incarceration in order to seek employment and the fact that he has a car sufficient to get to employment should he be able to find some, I view the decision of the family court as fundamentally unfair and failing to comport with the sound legal principles set out in long-standing caselaw which this Court is bound to follow.

Returning to the dictates of *Lewis*, *supra*, the Supreme Court made clear that 1) civil contempt charges should be related to the amount the defendant is found able to pay; 2) the contemnor's ability to satisfy the judgment is a question of fact for the trial judge; and 3) the trial court must make findings of fact regarding the ability to satisfy the judgment before ordering incarceration for failure to pay child support. The Supreme Court had occasion to revisit the principle of ability to pay in *Commonwealth*, *Cabinet for Health and Family Services v. Ivy*, 353 S.W.3d 324 (Ky. 2011). Similar to the case at bar, Ivy offered proof that she was unable to pay by reason of disability and had been determined to be disabled and needy by Social Security Administration standards. Acknowledging that receipt of SSI benefits, standing alone, does not compel a finding of inability to pay, the Supreme Court nevertheless emphasized that the

-11-

family court is not free to simply disregard the Social Security Administration's determination that an SSI recipient is disabled:

> If earning capacity is to be attributed to the recipient, or if child support is to be demanded from the SSI benefit itself, **there must be evidence clearly establishing the recipient's ability to work or the recipient's ability to afford the support payment**. We agree with the Court of Appeals that there was no such evidence here.
>
> . . .
>
> The family court's contempt finding, however, was not based so much on Ivy's failure to eke out a support payment from her SSI benefit. The court found, rather, that Ivy is "able-bodied and capable of providing support," and **thus apparently meant to impute to her, during the period prior to the hearing, the capacity to earn enough to pay at least some of the support she owed**. The court made no findings in support of this conclusion, as it should have done, and indeed made no reference to any evidence at all. Because the court failed to make findings of fact, our review is essentially for abuse of discretion.

*Id*. at 333-34 (footnote omitted) (emphases added).

Here, the family court failed to make findings as to Crandell's ability to work or to find employment given his disability. Rather, the family court, without apparent basis, simply imputed to him the ability to earn $251.00 per month "which is approximately the sum an individual will earn in one month working one eight (8) hour day each week at minimum wage ($7.25/hour)." Further, I am convinced that a request for release from incarceration to seek

-12-

employment cannot be construed as an admission by Crandell that suitable employment was available or that he would be physically capable of performing it. In my opinion, given the lack of appropriate findings concerning Crandell's ability to pay, the family court's finding of contempt constitutes an abuse of discretion and should be reversed.

Further, I cannot concur in the majority's refusal to address the propriety of the family court's sanction or remedy on the basis that Crandell failed to challenge it. The majority does, however, note in footnote 3 that the sanction in this case is nearly identical to the one invalidated in *Ivy*. Reviewing the arguments Crandell presses in this appeal in light of the holding in *Ivy*, I fail to conclude as did the majority that "Crandell has not challenged the circuit court's sanction on appeal." To my mind, Crandell's argument that he cannot be incarcerated due solely to his inability to pay cannot be logically separated from the nature of the sanction imposed – which was incarceration. In concluding that this argument is adequately preserved for our review, I turn to the Supreme Court's explanation of the sanction of contempt set out in *Ivy*:

> Having found a party in contempt, the court's next task is to fashion a remedy. Where, as here, the contempt proceeding is civil, the sanction may serve either to coerce the contemnor to comply with a court order, to compensate a party for losses caused by the contempt, or both. Coercive sanctions, such as daily fines or incarceration, are punishments imposed until the contempt is purged by compliance with an order. **For**

**the punishment to retain its civil character, the contemnor must, at the time the sanction is imposed, have the ability to purge the contempt by compliance and either avert the punishment or at any time bring it to an end**. **The contemnor bears the burden of proving his or her inability to meet the purge condition, but in imposing that burden the court should be mindful of the contemnor's overriding interest in not being required to perform an impossible act.**

*Id.* at 334-35 (citations omitted) (emphasis added). Because I am convinced that Crandell's arguments in this appeal place this issue squarely before us, I cannot conclude that the issue has not been adequately preserved.

Finally, the Supreme Court in *Ivy* made clear that an order predicated on *future* compliance is invalid:

Had the court properly found Ivy in contempt, it could, as a compensatory remedy, have ordered her to make payments toward her arrears in an amount she could afford. The court also could have ordered her imprisonment for past non-compliance. **The court's attempt to fashion a coercive remedy, however, by threatening Ivy with** *fixture* **[sic] incarceration for future violations of her support order, did not provide her with a true opportunity for purging, and thus was invalid.** As noted above, the purge condition of a coercive order must be something presently within the contemnor's ability to perform. Ivy had no present ability to perform future obligations. By itself, moreover, a future failure to pay would not, in and of itself, the court's order notwithstanding, justify Ivy's incarceration. That future conduct was not, and could not be, the subject of the pending contempt motion because it had yet to occur. If Ivy did fail to pay, she would be entitled to notice, a new hearing, and a finding that at that future

-14-

> point in time she had the ability to comply. Even were it valid, therefore, the court's order would amount to little more than a reaffirmation of the support order.

*Id.* at 335 (footnote and citations omitted) (emphases added). For the same reasons set forth in *Ivy*, I am convinced that the family court's imposition of a conditionally-discharged sentence dependent upon Crandell's *future* compliance with his payment obligations was not a condition with which he had a present ability to comply and thus, in my opinion, the contempt order is invalid and cannot be enforced.

BRIEFS FOR APPELLANT:

Karen Shuff Maurer
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Jeffrey L. England
Shepherdsville, Kentucky