RENDERED: AUGUST 4, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0880-MR

DAVID PARTIDA                                                          APPELLANT

v.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE JESSICA E. GREEN, JUDGE
ACTION NO. 00-CI-000912

INSTANT AUTO CREDIT, INC.                                             APPELLEE

OPINION
REVERSING

** ** ** ** **

BEFORE: ACREE, KAREM, AND TAYLOR, JUDGES.

ACREE, JUDGE: David Partida, Appellant, appeals the Jefferson Circuit Court's

July 8, 2022 denial of his motion to quash a non-wage garnishment filed by Instant

Auto Credit, Inc., Appellee. Appellant argues the circuit court erred in denying his

motion because Appellee miscalculated the amount Appellant owed pursuant to an

unsatisfied default judgment. We agree that the circuit court erred, and, therefore, we reverse.

## **BACKGROUND**

On or about December 7, 1996, Appellant and two other obligors co-signed for a loan to purchase a Mazda truck from a dealership in Louisville. When doing so, they entered into a Retail Installment Contract and Security Agreement, which was assigned to Appellee. Per the agreement, Appellant and company financed $6,114.50 and, upon application of an annual percentage rate of 25.75 percent, agreed to pay $3,322.90 in total finance charges, for a total amount to be paid of $9,437.40. The truck served as security for repayment of the loan.

Appellant and the other obligors defaulted on the loan on February 25, 1998. Rather than return the truck, Appellant and the others left the state, taking the truck with them. Appellee initiated an action to recover the remaining balance due on the loan on February 8, 2000, naming Appellant and the other obligors as defendants. The circuit court entered a default judgment on June 1, 2000. The default judgment awarded Appellee the unpaid $5,524.08 and, interpreting the contract's annual percentage rate to be a rate of interest accrual, awarded Appellee interest of 25.75 percent per annum, from February 25, 1998 until paid.

On April 9, 2022, Appellee filed with the circuit court a non-wage garnishment against Appellant – this garnishment was one of several that Appellee

pursued in the decades after it obtained its judgment in 2000. Appellee calculated the amount owed per the garnishment as $76,475.02, plus a "court ordered" interest rate of twelve percent. Appellee served the garnishment on banks where Appellant and his wife had accounts and garnished $15,753.88 from those accounts.

Appellant filed a motion to quash the garnishment with the circuit court[1] on May 9, 2022. The court scheduled a hearing on the motion for June 28, 2022. While counsel for Appellant appeared for the hearing, neither Appellant nor any legal representative appeared on Appellant's behalf. The circuit court entered an order denying the motion on July 8, 2022. Appellant initiated the current appeal shortly thereafter.

## **ANALYSIS**

Appellant appeals from an order denying his motion to quash a garnishment. Appellant argues Appellee miscalculated the amount due when it sought the non-wage garnishment. Accordingly, Appellant believes the circuit court erred in denying his motion to quash the garnishment.

In his brief, Appellant says this issue was preserved in his reply to Appellee's objection to his motion to quash the garnishment. However, this

---

[1] Apparently, the Jefferson Circuit Court's local rules require that all actions regarding garnishment enforcement are to be brought before the Master Commissioner. Regardless, the circuit court set for a hearing, and did hear, Appellant's motion to quash.

argument did not appear in Appellant's motion before the circuit court; rather, Appellant's motion contested application of Kentucky's long-arm statute, an argument that Appellant has not raised on appeal. Appellee argues that Appellant is prohibited from raising an argument for the first time in a reply and, therefore, Appellant has failed to preserve the arguments contained in his brief.

We disagree with Appellee. The argument in Appellant's reply was before the circuit court when it entered its order denying Appellant's motion to quash. It is a "firmly established rule that the trial court should first be given the opportunity to rule on questions before they are available for appellate review." *Elwell v. Stone*, 799 S.W.2d 46, 48 (Ky. App. 1990) (quoting *Massie v. Persson*, 729 S.W.2d 448, 452 (Ky. App. 1987), *overruled on other grounds by Conner v. George W. Whitesides Co.*, 834 S.W.2d 652 (Ky. 1992)). The circuit court in the present case was afforded this opportunity. On the record, the circuit court judge noted that she had fully considered the parties' written arguments when denying the motion. In our view, Appellant's argument has been preserved for our review.

Appellant challenges the circuit court's denial of his motion on the basis that the amount due under the garnishment is a miscalculation resulting from a misapplication of Kentucky law. Because this argument presents a question of law, our review is *de novo*. *Gosney v. Glenn*, 163 S.W.3d 894, 898-99 (Ky. App. 2005) (citations omitted).

The circuit court was persuaded by Appellee's calculation of the amount it was due, and Appellee repeats its explanation of that calculation for this Court. First, for the period between default and entry of the default judgment, it applied the 25.75 percent interest rate from the retail installment contract. It then combined the outstanding principal balance with the interest accrued prior to the default judgment. Then, contrary to the terms of the default judgment, which awards Appellee "the sum of $5,524.08 plus interest thereon at the contract rate of 25.75% per annum" from time of default until the balance is paid, Appellee instead calculated the garnishment amount using an interest rate of twelve percent, compounded annually.

Appellee argues it was not only entitled but required by KRS[2] 360.040 to apply the statutory rate, compounded annually, when calculating the amount to be garnished. Appellant argues, because the circuit court applied the contractual interest rate[3] to the default judgment, that the parties are bound by the terms of the default judgment, whether the circuit court erred in including the contractual rate or not.

---

[2] Kentucky Revised Statutes.

[3] Though it would seem odd that Appellant would prefer the 25.75 percent rate included in the judgment to the twelve percent rate which Appellee used in calculating the garnishment, Appellant argues in his brief that the judgment's interest is not compounded.

-5-

It is true that, at the time the circuit court entered its default judgment,

KRS 360.040 read in its entirety as follows:

> A judgment shall bear twelve percent (12%) interest compounded annually from its date. A judgment may be for the principal and accrued interest; but if rendered for accruing interest on a written obligation, it shall bear interest in accordance with the instrument reporting such accruals, whether higher or lower than twelve percent (12%). Provided, that when a claim for unliquidated damages is reduced to judgment, such judgment may bear less interest than twelve percent (12%) if the court rendering such judgment, after a hearing on that question, is satisfied that the rate of interest should be less than twelve percent (12%). All interested parties must have due notice of said hearing.

KRS 360.040 (1982).

Indeed, "a prevailing party's right to recover post-judgment interest is granted by statute." *Stone v. Kentucky Ins. Guar. Ass'n*, 908 S.W.2d 675, 677 (Ky. App. 1995). Further, "[t]here are no exceptions mentioned in the interest statute for any class of persons or any entities in this Commonwealth." *Id.* at 678 (citation omitted).

Under both the version of KRS 360.040 in effect at the time the judgment was entered and its subsequent versions, a trial court may deviate from the statutory rate in limited circumstances.[4] The trial court has discretion in the

---

[4] The current version of KRS 360.040 reads as follows:

amount of interest awarded in two situations: First, "where the claim is for unliquidated damages[,]" and, second, "where a party has agreed to 'accruing interest on a written obligation [in which case] it shall bear interest in accordance with the instrument reporting such accruals. . . .'" *Serv. Fin. Co. v. Ware*, 473 S.W.3d 98, 106 (Ky. App. 2015) (quoting KRS 360.040). Indeed, "[t]he remainder of the statute expressly permits a trial court to impose an interest rate of less than twelve percent – or even no interest at all – on a claim on unliquidated damages." *Hazel Enters., LLC v. Ray*, 510 S.W.3d 840, 843 (Ky. App. 2017); KRS 360.040(4). However, the damages due at time of default judgment in the instant case were liquidated, *i.e.*, damages "'of such a nature that the amount is capable of

---

(1) Except as provided in subsections (2), (3), and (4) of this section, a judgment, including a judgment for prejudgment interest, shall bear six percent (6%) interest compounded annually from the date the judgment is entered. A judgment may be for the principal and accrued interest.

(2) A judgment for unpaid child support payments shall bear twelve percent (12%) interest compounded annually from the date the judgment is entered.

(3) A judgment rendered on a contract, promissory note, or other written obligation shall bear interest at the interest rate established in that contract, promissory note, or other written obligation.

(4) When a claim for unliquidated damages is reduced to judgment, such judgment may bear less interest than six percent (6%) if the court rendering such judgment, after a hearing on that question, is satisfied that the rate of interest should be less than six percent (6%). All interested parties must have due notice of said hearing.

KRS 360.040 (2017). Though reorganized, the statute still provides the same allowance for deviation from the statutory rate as it did in 2000, when the circuit court entered its default judgment. Thus, though the cases cited herein discuss the exceptions as provided by subsequent versions of the statute, their analysis applies with equal force to the statute's then-effective version.

ascertainment by mere computation, [or] can be established with reasonable certainty[.]'" *3D Enters. Contracting Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 174 S.W.3d 440, 450 (Ky. 2005) (quoting 22 AM. JUR. 2D *Damages* § 469 (2004)).

Therefore, we must determine whether the second situation noted in *Ware* applies: did Appellant agree to accruing interest under the retail installment contract? Upon our examination of the contract, Appellant did not. In *Ware*, we determined that a retail installment contract for the purchase of an automobile did not bear interest, but rather simply contained a "time price differential"; as defined by statute, a "time price differential," "'however denominated or expressed'" is "'the amount which is paid or payable for the privilege of purchasing goods or services to be paid for by the buyer in installments over a period of time.'" *Ware*, 473 S.W.3d at 105 (quoting KRS 371.210(12)).

The contract denominated Ware's time price differential as a "finance charge," and the contract determined the finance charge by applying an "annual percentage rate" of fifteen percent. *Id.* Fifteen percent was the statutory maximum time price differential that the dealership could apply to the purchase of Ware's vehicle under KRS 190.110(1). *Id.* Further, Ware "did not sign an instrument reporting the accrual of interest at any rate." 473 S.W.3d at 106. Accordingly, we determined Ware "agreed only to purchase a vehicle at a price determined by

adding (1) the cost of the vehicle if she had paid cash and (2) the time price differential." *Id.*

As in *Ware*, Appellant's contract did not bear interest, but included instead a time price differential. While the contract includes an annual percentage rate of 25.75 percent, this is included to demonstrate to the purchaser how the finance charge is calculated. The finance charge is listed as $3,322.90, which, when combined with the $6,114.50 which Appellant financed to purchase the truck, results in a total payment amount of $9,437.40. Nowhere in the agreement does Appellant agree to accrual of interest on the purchase.

Because Appellee's claim underlying the default judgment was for liquidated damages, and because Appellant did not agree to accrued interest as a condition of his purchase of the truck, the circuit court was not empowered to deviate from KRS 360.040's prescribed interest rate when it entered its default judgment. Therefore, it was a misapplication of law for the circuit court to include in its default judgment the contract's annual percentage rate in lieu of the mandatory statutory interest rate.

Appellant argues that, although the circuit court might have erred in this regard, the parties remain bound to the terms of the default judgment. We note that the default judgment was a final and appealable order in accordance with CR[5]

---

[5] Kentucky Rules of Civil Procedure.

54.02(1), and any appeal therefrom has long since been waived. However, interest rates on unsatisfied judgments are statutory products and apply irrespective of the terms of the judgment itself. In 1978, the Supreme Court of Kentucky, in *Ridge v. Ridge*, identified a division of authority across state courts as to whether interest on judgments is a contractual or statutory matter. 572 S.W.2d 859, 861 (Ky. 1978). If interest rates are a contractual matter, they become fixed at the date a judgment is rendered; if they are a statutory matter, rates "are subject to later change by law, the change to take effect from the date of the statute." *Id*. The Supreme Court held that "the rate of interest on judgments is a statutory rather than a contractual matter" and that an "increase of the legal interest rate applies prospectively to prior unsatisfied judgments, the new rate beginning with the effective date of the amendment." *Id*.

For this reason, though the final judgment contains the 25.75 percent figure, the applicable interest rate on unsatisfied judgments is instead tethered to KRS 360.040(1). Thus far, we agree with Appellee.

However, contrary to its own argument – indeed, its own quotation of the rule from *Ridge* – Appellee believes it was entitled to apply the rate listed in KRS 360.040 at the time of the default judgment's entry. While it is correct that the statute applied a rate of twelve percent in the year 2000, the statute has again been amended. At present, the statute provides that, except for inapplicable

exceptions as discussed *supra*, "a judgment, including a judgment for prejudgment interest, shall bear six percent (6%) interest compounded annually from the date the judgment is entered." KRS 360.040(1). Changes in the legal interest rate on judgments "applies prospectively to prior unsatisfied judgments," *Ridge*, 572 S.W.2d at 861, and, therefore, Appellee incorrectly applied a twelve percent interest rate when calculating the garnishment amount. For this reason, and not for the reason Appellant proffered, the circuit court erred when it denied Appellant's motion to quash the garnishment. Appellee is entitled to claim interest only to the extent permitted by the statute in effect at the time of judgment and, thereafter, as amended.

## **CONCLUSION**

For the foregoing reasons, we reverse the Jefferson Circuit Court's July 8, 2022 order denying Appellant's motion to quash the non-wage garnishment.

ALL CONCUR.

BRIEFS FOR APPELLANT:

James H. Lawson
Shelbyville, Kentucky

BRIEF FOR APPELLEE:

Darryl W. Durham
Michael R. Gosnell
Louisville, Kentucky