RENDERED: NOVEMBER 1, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0218-ME

K.H.                                                                                                    APPELLANT

v.

APPEAL FROM KENTON CIRCUIT COURT
HONORABLE THOMAS A. RAUF, JUDGE
ACTION NO. 23-AD-00061

CABINET FOR HEALTH AND
FAMILY SERVICES,
COMMONWEALTH OF KENTUCKY
AND A.S., A CHILD                                                                       APPELLEES

AND

NO. 2024-CA-0220-ME

K.H.                                                                                                    APPELLANT

v.

APPEAL FROM KENTON CIRCUIT COURT
HONORABLE THOMAS A. RAUF, JUDGE
ACTION NO. 23-AD-00062

CABINET FOR HEALTH AND
FAMILY SERVICES,
COMMONWEALTH OF KENTUCKY;
M.K. (A.K.A. M.W.); AND M.K., A
CHILD                                                                                                APPELLEES

AND

NO. 2024-CA-0222-ME

K.H.                                                    APPELLANT

                    APPEAL FROM KENTON CIRCUIT COURT
v.                  HONORABLE THOMAS A. RAUF, JUDGE
                    ACTION NO. 23-AD-00063

CABINET FOR HEALTH AND
FAMILY SERVICES,
COMMONWEALTH OF KENTUCKY;
B.K., A CHILD; AND M. K. (A.K.A.
M.W.)                                                  APPELLEES

AND

NO. 2024-CA-0224-ME

K.H.                                                    APPELLANT

                    APPEAL FROM KENTON CIRCUIT COURT
v.                  HONORABLE THOMAS A. RAUF, JUDGE
                    ACTION NO. 23-AD-00064

CABINET FOR HEALTH AND
FAMILY SERVICES,
COMMONWEALTH OF KENTUCKY;
M.S., A CHILD; AND S.S.

                                                       APPELLEES

AND

NO. 2024-CA-0248-ME

M.K. (A.K.A. M.W.)                                                          APPELLANT


                        APPEAL FROM KENTON CIRCUIT COURT
v.                      HONORABLE THOMAS A. RAUF, JUDGE
                        ACTION NO. 23-AD-00062


CABINET FOR HEALTH AND
FAMILY SERVICES,
COMMONWEALTH OF KENTUCKY;
K.H.; AND M.K., A CHILD                                                     APPELLEES

AND


NO. 2024-CA-0253-ME

M.K. (A.K.A. M.W.)                                                          APPELLANT


                        APPEAL FROM KENTON CIRCUIT COURT
v.                      HONORABLE THOMAS A. RAUF, JUDGE
                        ACTION NO. 23-AD-00063


CABINET FOR HEALTH AND
FAMILY SERVICES,
COMMONWEALTH OF KENTUCKY;
B.K., A CHILD; AND K.H.                                                     APPELLEES

OPINION<br>AFFIRMING

** ** ** ** **

BEFORE: ECKERLE, GOODWINE, AND MCNEILL, JUDGES.

MCNEILL, JUDGE: K.H. (Mother), Appellant in Case Nos. 2024-CA-0218-ME; 2024-CA-0220-ME; 2024-CA-0222-ME; and 2024-CA-0224-ME, appeals four judgments of the Kenton Circuit Court which terminated her parental rights to A.S., M.K., B.K., and M.S. (the Children).[1] M.K.[2] (Father), Appellant in Case Nos. 2024-CA-0248-ME and 2024-CA-0253-ME, also appeals two of those four judgments which terminated his parental rights to his two children, M.K. and B.K.[3] After a careful review of the record on appeal, the relevant law, and the briefs filed, we affirm the circuit court's judgments terminating parental rights.

---

[1] The judgment in Case No. 2024-CA-0224-ME also terminated the parental rights of S.S., the father to M.S. S.S. voluntarily terminated his parental rights and has not filed a brief or a notice of appeal in these matters. The father of A.S., who is the child subject in Case No. 2024-CA-0218-ME, is unknown.

[2] The circuit court recognized that M.K. officially changed his name from M.W. in Kenton District Court Case No. 18-P-00624, though this change has not been reflected in various other proceedings involving M.K. (No. 23-AD-00062 Record "R." at 84.)

[3] The four appeals filed by Mother were consolidated by this Court's Order of March 21, 2024. The two appeals filed by Father were also consolidated on the same date. While the appeals filed by Mother and those filed by Father remain two separate matters, all six appeals were ordered to be heard together, so the Court issues a combined Opinion in these related appeals.

-4-

# BACKGROUND

This family was first involved in dependency, neglect, or abuse ("DNA") proceedings in Boone County in 2013.[4] While those proceedings were happening, Father was incarcerated as the result of criminal actions regarding drug trafficking, sexual abuse, and incest involving a minor family member.[5] (R. at Petitioner's Exhibit 8 to Dec. 11, 2023 Hearing.) The Boone County DNA cases ended with Mother regaining custody and the Boone Circuit Court entering a no contact order between Father and his children. (R. at Petitioner's Exhibit 10 to Dec. 11, 2023 Hearing.) Father sought relief from the order in 2020 with the help of counsel, but his motion was ultimately denied. The no contact order is still in place.

The Kenton Circuit Court became involved with this family in April of 2022 when school officials filed DNA petitions regarding excessive school absences of the Children. There were also issues with the Children's supervision, environmental neglect, and ongoing substance abuse on the part of Mother. After Mother tested positive for drugs, the Appellee, Cabinet for Health and Family

---

[4] Case Nos. 13-J-472-001 and 13-J-473-001.

[5] Case Nos. 13-F-01142, 13-CR-00767, and 15-CR-00158.

Services ("the Cabinet"), filed its own DNA petitions and the circuit court granted custody of the Children to the Cabinet on August 16, 2022.[6]

Over the course of the underlying DNA cases in Kenton County, Father remained incarcerated, and Mother was in and out of jail multiple times for various crimes concerning drugs.[7] At one point Mother was to attend and complete Recovery Court, an inpatient substance abuse recovery and treatment program, but was later discharged for failing to comply with its terms. The last time Father saw his children was sometime before his incarceration in 2014 and the last time Mother had contact with the Children was in September 2022.

The Cabinet filed termination of parental rights ("TPR") petitions on May 4, 2023, at which time parents were both appointed counsel and served with

---

[6] Father was not initially served with the DNA petitions and was not appointed counsel in those proceedings until September 2023. However, Father was not a custodial parent, and so was not necessarily afforded the right to appointed counsel in those proceedings. *B.L. v. J.S.*, 434 S.W.3d 61, 66-67 (Ky. App. 2014). While the law otherwise supports that Father should have received notice of the DNA proceedings, because of the existence of the no contact order in place from the Boone County DNA cases and the fact that separate findings of abuse and neglect were made against Father in the termination proceedings, Father's lack of involvement in the initial DNA proceedings did not particularly impact whether termination could be obtained against Father or otherwise jeopardize his parental rights. *See, e.g.*, *A.M.S. v. Cabinet for Health & Fam. Servs.*, No. 2020-CA-0616-ME, 2021 WL 840366, at *9 (Ky. App. Mar. 5, 2021). We cite this unpublished case for its illustrative value and not as authority, pursuant to Kentucky Rule of Appellate Procedure ("RAP") 41(A). Thus, any error regarding notice given to Father in the DNA proceedings does not amount to an error warranting reversal in the termination proceedings. Notably, Father does not raise this argument on appeal nor has he appealed any order from the DNA proceedings.

[7] Case Nos. 23-F-00010 and 23-CR-00233-002. Information about the existence of charges may be referenced by an appellate court to provide perspective for the trial court proceedings. *See, e.g.*, *Mulazim v. Commonwealth*, 600 S.W.3d 183, 203 n.6 (Ky. 2020).

-6-

the petitions. Initially, the TPR hearing was set for November 15, 2023. Before the hearing, Father's counsel filed a motion to continue as well as a motion to withdraw. (No. 23-AD-00062, R. at 62.) Father's counsel explained that she and Father had a deterioration of the attorney-client relationship and irreconcilable differences on Father's litigation strategy. The circuit court granted both motions, over the Cabinet's objection to the continuation. It appointed Father new counsel contemporaneously and continued the hearing to December 11, 2023. In granting the motion to continue, the circuit court stated that it would not be granting any further continuances and noted the statutory requirement for TPR hearings to occur and be fully adjudicated within six months after the filing of the TPR petitions.[8] (Video Record ("V.R.") Nov. 15, 2023 – Hearing, 10:51:00.)

The day before the December 11, 2023 hearing, Father's new counsel filed another motion to continue, stating that Father had several issues he wanted to raise and that counsel wanted more time to prepare on those issues. (No. 23-AD-00062, R. at 79.) The circuit court allowed counsel some time to meet further with Father before the TPR hearing but denied the motion to continue, stating that it had already transported Father from the jail multiple times and continued the hearing once, which was a result of Father's actions in requesting new counsel. (V.R. Dec.

_____

[8] *See* Kentucky Revised Statutes ("KRS") 625.050(7).

11, 2023 – Hearing, 9:38:15.) During the hearing, the circuit court heard testimony from the Cabinet, Father, and Mother.

Upon the conclusion of the hearing, the circuit court instructed all parties to file proposed findings of fact and conclusions of law. It ordered the Cabinet to submit its proposed findings and conclusions of law first, with the parents to each submit their own after reviewing the Cabinet's. The circuit court entered findings of fact and conclusions of law as well as TPR judgments on January 24, 2024. On appeal, Father argues that both of his appointed counsel below were ineffective and the circuit court erred in denying his motion to continue. Mother argues that the circuit court failed to find that she had made sufficient and sustained progress to being reunified with the Children, and thus termination was not in the Children's best interests.

## STANDARD OF REVIEW

In Kentucky, parental rights may be involuntarily terminated after three determinations are made: (1) the child is "[a]bused or neglected[,]" as defined by KRS 600.020(1); (2) the termination must be in the child's best interest; and, (3) at least one ground of parental unfitness as set out in KRS 625.090(2) exists. KRS 625.090; *see also Cabinet for Health and Fam. Servs. v. K.H.*, 423 S.W.3d 204, 209 (Ky. 2014). The termination decision will only be reversed if it is clearly erroneous, or, in other words, if there is no substantial, clear, and

convincing evidence to support the decision. *Cabinet for Health & Fam. Servs. v. T.N.H.*, 302 S.W.3d 658, 663 (Ky. 2010).

Regarding a motion to continue, a lower court has "a broad discretion in granting or overruling a motion for continuance and this Court will not interfere in the exercise of that discretion unless it is clearly abused." *Stallard v. Witherspoon*, 306 S.W.2d 299, 300 (Ky. 1957). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

## ANALYSIS

To begin, the Cabinet has requested that Father's brief be stricken for a failure to follow this Court's rules regarding adequate briefing requirements, namely, RAP[9] 32(A)(4), because the brief does not contain adequate preservation statements or provide ample citations to the record on appeal. Father's statement of the case is exceedingly short and only cites generally to portions of the circuit court's findings of facts and conclusions of law. And while Father's brief does cite to multiple documents from the record on appeal, the references are to the brief's own appendix, "which is not a substitute for the rule's requirement to cite only to

---

[9] Kentucky Rules of Appellate Procedure.

the certified record on appeal." *J.P.T. v. Cabinet for Health & Fam. Servs.*, 689 S.W.3d 149, 151 (Ky. App. 2024) (citing *Serv. Fin. Co. v. Ware*, 473 S.W.3d 98, 102 n.4 (Ky. App. 2015)).

There are certain sanctions the Court may impose for briefing violations, and whether to impose them is within the discretion of this Court. *See* RAP 31(H); *see also Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007). Considering the serious nature of TPR proceedings, we choose not to impose any of those sanctions in this instance, though we remind counsel of the need to properly cite to the certified written record on appeal for the future.[10] *J.L.R. v. A.L.A.*, 645 S.W.3d 63, 66 (Ky. App. 2022); *K.M.J. v. Cabinet for Health & Fam. Servs.*, 503 S.W.3d 193, 196 (Ky. App. 2016); *see also, generally*, *J.P.T.* 689 S.W.3d 149.

That being said, after reviewing the record on appeal, it does not appear that all of Father's arguments were properly preserved. Specifically, Father failed to preserve his claim for ineffective assistance of counsel. "As a general rule, a claim of ineffective assistance of counsel will not be reviewed on direct appeal from the trial court's judgment, because there is usually no record or trial

---

[10] We recognize that Mother's statement of the case is similarly short to Father's and her brief does not directly cite to the written record on appeal. While the Cabinet did not request for her brief to be stricken, we offer the same reminder to Mother's counsel for the importance of complying with briefing guidelines.

court ruling on which such a claim can be properly considered." *Humphrey v. Commonwealth*, 962 S.W.2d 870, 872 (Ky. 1998). Furthermore, "claims of ineffective assistance of counsel are best suited to collateral attack proceedings, after the direct appeal is over, and in the trial court where a proper record can be made." *Id.* In this case, Father made no claim of ineffective assistance of counsel below. In fact, the only complaint Father voiced to the circuit court against his first appointed counsel was that she would not make an objection he wanted to make, which was the reason that led to her withdrawal. (V.R. Nov. 15, 2023 – Hearing, 10:45:05.) Likewise, Father did not voice a concern with his second appointed counsel, nor does he raise any actual complaints with that counsel in his brief. "Before an argument may be raised at the appellate level, it must first be brought before the trial court . . . . The Court of Appeals is one of review and is not to be approached as a second opportunity to be heard as a trial court." *Lawrence v. Risen*, 598 S.W.2d 474, 476 (Ky. App. 1980). Thus, we are unable to review this argument on appeal.

Next, we shall address the circuit court's denial of Father's motion to continue. Regarding a motion for continuance, there are a number of factors relevant for our review. *P.S. v. Cabinet for Health & Fam. Servs.*, 596 S.W.3d

-11-

110, 117 (Ky. App. 2020).[11] As to termination of parental rights in particular, hearings are to occur and be fully adjudicated within six months of a petition being filed. KRS 625.050(7). Despite this requirement and the Cabinet's objection, the circuit court granted Father's first motion to continue and continued the hearing beyond six months to December 11, 2023, for Father's benefit. The grant of a second continuance, again in contravention of KRS 625.050(7) and over the Cabinet's objection, would further prejudice the Cabinet and potentially prolong the time for the Children to obtain any permanency. In addition, any conceivable prejudice to Father was further ameliorated by the circuit court; it granted his counsel additional time before the hearing to speak with Father and allowed the parents to submit their own proposed findings of fact and conclusions of law with the benefit of filing theirs after reviewing the Cabinet's proposed findings of fact and conclusions of law.

Furthermore, the parents had already been transported from jail, and while prisoners are afforded the right to a hearing and to be transported from any facilities which they are incarcerated, the cost and logistics in effectuating transport can be a factor for the circuit court to consider in whether to grant a

---

[11] Those factors are: "(1) length of delay; (2) previous continuances; (3) inconveniences to litigants, witnesses, counsel, and the court; (4) whether the delay is purposeful or is caused by the accused; (5) availability of other competent counsel; (6) complexity of the case; and (7) whether denying the continuance will lead to identifiable prejudice." *Snodgrass v. Commonwealth*, 814 S.W.2d 579, 581 (Ky. 1991).

-12-

motion to continue. *See, e.g.*, *Taylor v. Commonwealth*, 611 S.W.3d 730, 735 (Ky. 2020).

Finally, while both parents voiced their preference to have the case continued for the opportunity to work their case plans, this is not a sufficient reason to continue. As both parents testified, they were incarcerated at the time of the trial, and it would have been a significant amount of time before either of them could make any substantial progress on any case plans provided by the Cabinet. Under the totality of the circumstances, we cannot hold the circuit court abused its discretion in denying Father's second motion to continue.

Next, we shall address the argument raised by Mother concerning the findings made by the circuit court.[12] She does not contest the findings that the Children were abused or neglected and that grounds for parental unfitness existed; she asserts only that it was not in the Children's best interests for the termination to occur. Specifically, Mother argues that it would not be in the Children's best interests to terminate her parental rights given the factors set forth in KRS 625.090(3)(d) and (e).[13]

---

[12] Father does not take any issue with the merits or findings made by the circuit court on appeal, so we will limit our focus solely to Mother's involvement.

[13] In relevant part, KRS 625.090(3) provides:

> In determining the best interest of the child and the existence of a
> ground for termination, the Circuit Court shall consider the
> following factors:

-13-

At the hearing, Mother testified about working towards getting her GED, her recent substance abuse treatment with Ramey Estep Homes, and her plans to obtain employment and return to Ramey Estep for sober living upon her release from incarceration (V.R. Dec. 11, 2023 – Hearing, 12:10:20.) On the other hand, the Cabinet worker testified at length about Mother's failure to make substantial progress or accomplish any items on her case plan for the previous 15 months; Mother's substance abuse issues; Mother's criminal entanglements; and Mother's lack of exercising visitations with the Children when she was able to do so. (V.R. Dec. 11, 2023 – Hearing, 10:38:30.) Additionally, Mother herself testified that she had recurring substance abuse issues since 2013; she admitted to having left court-ordered substance abuse treatment previously; she admitted to not maintaining contact with a Recovery Court worker, which resulted in her being removed from the program; she admitted to being in and out of jail during the pendency of the DNA case for drug related crimes; and she acknowledged it would

---

. . .

> (d) The efforts and adjustments the parent has made in his [or her] circumstances, conduct, or conditions to make it in the child's best interest to return him [or her] to his [or her] home within a reasonable period of time, considering the age of the child.

> (e) The physical, emotional, and mental health of the child and the prospects for the improvement of the child's welfare if termination is ordered.

-14-

be a few months before she could make substantial progress to complete tasks on her case plan, or have the opportunity to have the Children placed with her. (V.R. Dec. 11, 2023 – Hearing, 11:59:00.)

Regarding the Children specifically, the Cabinet worker testified about the progress they have made in their foster homes. She stated that the Children were thriving, are doing well in school, and have bonded with their foster families, which were prospective adoptive homes. (V.R. Dec. 11, 2023 – Hearing, 10:53:53.)

While we commend Mother's progress in addressing her substance abuse issues and maintaining her sobriety, it is apparent from the record on appeal that there was substantially clear and convincing evidence to support the circuit court's statutory findings and its decision to terminate Mother's parental rights. The circuit court took into consideration both the evidence presented by Mother and the Cabinet and weighed it, ultimately finding in favor of the Cabinet. "[I]t is within the exclusive province of the trial court to weigh the evidence. Its finding was supported by sufficient evidence, and we may not disturb it." *R.P., Jr. v. T.A.C.*, 469 S.W.3d 425, 428 (Ky. App. 2015).

## CONCLUSION

Accordingly, we hold that the circuit court did not abuse its discretion in denying Father's second motion to continue and that its findings of fact were not

clearly erroneous.  For these reasons, we affirm judgments of termination of parental rights entered by the Kenton Circuit Court.

ALL CONCUR.

BRIEF FOR APPELLANT K.H.:

Donna M. Bloemer
Covington, Kentucky

BRIEF FOR APPELLANT M.K.:

Michael L. Rice
Erlanger, Kentucky

BRIEF FOR APPELLEE CABINET
FOR HEALTH AND FAMILY
SERVICES:

Kevin Martz
Covington, Kentucky

-16-